## Case No. 3,275.
COULSON et al. v. PORTLAND et al.

[Deady. 481;[1] 2 Am. Law T. Rep. U. S. Cts. 156.]

Circuit Court, D. Oregon. Dec. Term, 1868.

EQUITY JURISDICTION—CLOUD ON TITLE—ENJOINING MUNICIPAL CORPORATION—UNLAWFUL TAXATION—ORDINANCES.

1. The jurisdiction of a court of equity to remove a cloud upon title to real property, is confined to instances where the instrument or proceeding complained of appears to be valid on its face, but is in fact void or invalid, for some reason or matter, which can only be shown by extrinsic evidence; but, semble, that such court has jurisdiction to prevent a cloud being cast upon title to real property, without reference .to the fact whether such instrument or proceeding appears to be valid on its face or not.

[Cited in West Portland Homestead Ass'n v. Lownsdale, 17 Fed. 618; McConnaughy v. Ponnoyer, 43 Fed. 342.]

---

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]

2. A court of equity has jurisdiction to enjoin a municipal corporation from committing a breach of trust concerning property or franchises held by it for the inhabitants thereof, but an ordinance providing for levying a tax is an exercise of legislative power, in the enactment of which such corporation acts not as a trustee, but as a local government, exercising a portion of the supreme power of the state.

3. A court of equity will enjoin a municipal corporation from unlawfully issuing interest coupons, payable through a period of twenty years, and levying a tax for the payment thereof, upon the complaint of an owner of property liable to such tax, so as to prevent a multiplicity of suits..

[Cited in Tilton v. Oregon Cent. M. R. Co., Case No. 14,055; Dundee Mortg., etc., Co. v. School Dist. No. 1. 19 Fed. 364; Salem Capital Flour Mills Co. v. Stayton Water Ditch & C. Co., 33 Fed. 155.]

4. Where a municipal corporation which has power to construct public buildings, but is forbidden "to raise money for or loan its credit to or in aid" of any private corporation, passes an ordinance providing for contracting with a railway company for the erection of public buildings, a court has no power to inquire whether the real object of such ordinance is to provide for the construction of such buildings or to raise money, etc., in aid of said railway company.

5. Section 135 of the charter of Portland, prohibited the city from contracting an indebtedness exceeding $50,000. *Held,* that an ordinance assuming a liability of $350,000, to be paid in semi-annual installments in the course of twenty years, although it provided for the payment of such installments by the levy of taxes as they fell due, was in violation of such section and void.

[Cited in Murphy v. East Portland, 42 Fed. 309.]

6. A court of equity has no power to restrain a municipal corporation in the disposition or management of taxes collected under a void ordinance. on the complaint of a single property holder therein.

[Cited in Murphy v. East Portland, 42 Fed. 309.]

This suit is brought [by Henry and Theresa Coulson against the city of Portland, Hamilton Boyd, William S. Caldwell, C. P. Ferry, and others] to enjoin the defendants from countersigning and issuing the interest coupons to the bonds of the Oregon Central Railroad Company, and from levying and collecting a tax upon the real property of the complainants, within the corporate limits of the city of Portland, for the purpose of paying such interest coupons as they become due. The complaint was filed on November 14, and a rule was then entered and served, requiring the defendants to appear on the twenty-fifth of the same month and show cause why a preliminary injunction should not issue against them, as prayed for in the complaint. On the twenty-fifth, the complainants and defendants appeared by their counsel, and consented to postpone the hearing of the motion until December 2d. On that and the following day, the motion was heard on the complaint and exhibits, and was continued for consideration.

John H. Mitchel, for complainants.

W. Lair Hill and Addison C. Gibbs, for defendants.

DEADY, District Judge. The material facts stated in the complaint are as follows:

1. That the complainants are husband and wife, and citizens of California; and that the city of Portland is a municipal corporation of the state of Oregon, and that the defendants—Hamilton Boyd, W. S. Caldwell and C. P. Ferry, are citizens of the state of Oregon, and officers of such municipal corporation, namely: mayor, clerk and treasurer.

2. That the complainants are owners of real property within the corporate limits of the city of Portland, of the value of $15,000, and that such property is subject to all taxes. charges and assessments imposed on real property within the corporate limits aforesaid, by the authority of such municipal corporation.

3. That on February 5, 1868, the city of Portland, by means of the common council and the mayor thereof, passed an ordinance, entitled as follows: "An ordinance to secure material for the public buildings, and the construction of streets adjacent to the public grounds, and for other purposes, and to levy a special tax therefor."

A copy of the ordinance is attached to the complaint and made a part of it. The first section thereof reads as follows:

"Section 1. That for the purpose of securing gravel, stone, brick, clay, lumber and timber, and the construction and repair of the city buildings of the city of Portland, and of the streets adjacent to the public ground, and for the other purposes hereinafter provided, the corporation known as the 'Oregon Central Railroad Company, of Portland, Oregon,' be and is hereby authorized to issue two hundred and fifty bonds of a thousand dollars each, bearing interest at the rate of seven per centum per annum, commencing on the first day of July, 1868, and payable on the first days of January and July thereafter, semi-annually, for the term of twenty years; said bonds having thereto attached forty interest coupons to each bond, each coupon representing the half yearly interest of its respective bond; said coupons to be signed by the secretary of said company, and countersigned by the mayor and auditor of the city of Portland, as hereinafter provided, and to be made payable in United States gold coin, at the city of Portland, at the city treasury of said city, at Portland, Oregon."

Section 2 of the ordinance substantially provides, that in 1868 a tax of two and a half mills on the dollar shall be levied and collected on all taxable property within the city, in the same manner as other city revenue may be collected; and that the moneys derived from said tax be appropriated and set apart as railway fund, out of which "fund" the said interest coupons, payable January 1, 1869, shall be paid as they fall due and are presented for payment.

Section 3 provides that in 1869, and annually thereafter for the period of eighteen years, in addition to the other taxes, a tax of four mills on the dollar shall be levied and collected on all taxable property within the city, in the same manner as other city revenue may be collected; and that the moneys derived from such tax be appropriated and set apart as a railway fund, out of which "fund" the interest coupons on said two hundred and fifty bonds shall be paid as they fall due and are presented for payment.

This section also provides, that the city may reduce the rate of taxation in proportion to the increase of taxable property, so that the revenue derived from the same shall not be less than the sum of $17,500 per annum in gold coin; and that, if at any time the money in the railway fund should be insufficient to pay such coupons when due, they are to be paid from the "general fund," or the common council may make such other contracts or arrangements to supply the deficiency as may be necessary; and that the city of Portland shall never be liable for the principal of such bonds.

Section 4 provides that the O. C. R. Co. shall grade and prepare for the rail the first five miles of the track of their railway, before December 31, 1868, and also the first twenty miles thereof before July 1, 1869, otherwise the ordinance to be null and void.

Section 5 provides, that upon the grading of the first five miles of the track, as provided in section 4, the mayor and auditor of the city shall countersign the coupons attached to one hundred of said bonds, and deliver the same to W. S. Ladd, to sell for the benefit of the company, at not less than eighty-five cents on the dollar, with the privilege of hypothecating the said bonds, or any portion thereof, on the best terms said company can secure to raise money; and upon the grading of another five miles of said track, said mayor and auditor shall countersign the coupons attached to seventy-five others of said bonds, and deliver the same to said Ladd to sell or hypothecate for the benefit of the company, as above mentioned; and also upon the grading of ten additional miles of said track, as provided in section 4, the said mayor and auditor shall countersign the coupons attached to the remaining seventy-five of said bonds, and deliver them to said Ladd, for sale or hypothecation, for benefit of the company, as in the case of the preceding bonds, and upon the completion of the first twenty miles of the track, said Ladd is to surrender to the company all the bonds remaining unsold.

Section 6 provides for the examination of the work on the track, and the certificate to be presented to the mayor and auditor to authorize them to countersign the coupons and deliver the bonds as directed in section 5.

Section 7 provides that this ordinance and the agreement of the city to pay the interest coupons as provided therein, is made upon the condition and consideration that the O. C. R. Co. contracts and agrees "at any and all times for the period of twenty years from January 1, 1869, to transport and convey over their railway all public messengers required to travel at the expense of said city, free of charge, and also transport, carry and convey over their said railway, to or from any point on their line, as may be required, free of charge, or other compensation for transportation than is provided in this ordinance, all stone, gravel, earth, lumber and timber, or other materials which the city of Portland may require, to be transported over the said company's railway for the construction or repair of streets adjacent to public grounds, public buildings of said city, and any and all purposes for which the city of Portland may now, or any other time hereafter, lawfully provide."

Section 8 provides for the execution and filing with the city clerk of the O. C. R. Co., agreement to accept the propositions contained in the ordinance, and "perform the conditions and considerations" on the part of said company, as therein specified.

Sections 9 and 10 of the ordinance provide for the contingency of the O. C. R. Co. not accepting or complying with the terms and conditions of the ordinance, and have no bearing upon the questions arising in this suit.

4. That the O. C. R. Co. is a private corporation, incorporated under the laws of Oregon, for the purpose of constructing a railway from Portland to the northern boundary of California.

5. That the title and body of said ordinance do not truly state the object thereof, but the contrary, for the purpose of deceiving the tax payers; and that the real object of such ordinance is to raise money for and to loan the credit of the city of Portland to the O. C. R. Co., for a period of twenty years, and to the amount of $350,000 in coin; and that said common council and mayor had no power or authority to pass said ordinance, and the same is therefore illegal and void.

6. That in pursuance of section 2 of said ordinance, the corporate authorities of the city of Portland, during the present year, have levied and collected, in gold coin, two and a half mills on the dollar, upon the taxable property within its limits, which tax, amounting to over $10,000, is now in the hands of the defendant, C. P. Ferry, who threatens to pay out the same to the holders of said coupons as in said ordinance provided; and that the complainants are interested in said $10,000 to the extent of the tax collected from their property aforesaid.

7. That the O. C. R. Co. is grading the first five miles of its track, and threatens and intends to complete the same as in said ordinance provided, before December 31, 1868, so as to entitle it to the benefit of the first 100 of said bonds; and the said corporate author-

ities are threatening and do intend to issue as provided in said ordinance, the interest coupons to said 100 bonds, and deliver the same to said W. S. Ladd, whereby the faith of the city of Portland will be pledged in aid of said company to pay said interest coup. ns on said 100 bonds semi-annually for twenty years; and that said Ladd intends to put such bonds upon the market in the Pacific and Atlantic states for sale and circulation; and said Ferry threatens to pay the first interest coupons of the first 100 bonds on presentation of the same at his office, out of the proceeds of the two and a half mill tax, now collected.

8. That defendants threaten and intend to levy and collect further taxes as provided in said ordinance for the purpose of paying the interest coupons of said bonds, thereby involving the city of Portland in a debt, and lending its credit to the O. C. R. Co., of $350,000; and unless such defendants are restrained in the premises, such bonds and coupons will pass into the hands of innocent purchasers, whereby the right of the complainants and the city to defend against the same will be defeated.

9. That unless the defendants are restrained in the premises, the complainants will be put to the necessity of maintaining a multiplicity of actions to recover back the taxes so wrongfully collected from them, and threatened to be collected for the next twenty years in aid of said O. C. R. Co.

10. That by virtue of the act incorporating the city of Portland, real property may be sold for delinquent taxes, upon a warrant issued by the auditor and clerk of the city, attached to the tax roll and directed to the city marshal, and that upon such sale a deed is made to the purchaser by the marshal, which deed is not required to recite the previous proceedings therein, and is deemed to convey the interest or estate of the person to whom the same was assessed, and that if defendants are not restrained from levying and collecting taxes upon the property of the complainants under the provisions of said ordinance, and by the means provided for the collection of taxes in the charter of said city, then there will be a cloud cast upon the title of the complainants to the real property above mentioned.

11. That the matter in controversy exceeds the value of five hundred dollars; and that the act and doings aforesaid are contrary to equity, etc., and that the complainants are without a plain, adequate and speedy remedy at law—wherefore they pray a temporary injunction, and that upon the final hearing the defendants may be perpetually enjoined, etc.

Assuming that ordinance numbered 468 is illegal and void, the complainants' counsel insist that they are entitled to maintain suit for relief in equity upon all or either of the following grounds: (1) To prevent a cloud being cast upon the title to their property by the enforced sale of it, for this tax; (2) to prevent the corporation of Portland from violating its trust; and, (3) to prevent a multiplicity of suits. Upon the consideration of the first ground, the question arises—what constitutes a cloud upon title?

For the defendants it is claimed that a proceeding which is void upon its face cannot cast a cloud upon title; and therefore, if ordinance 468 is void, as claimed by complainants, the tax complained of is invalid, and the invalidity is apparent upon the proceedings to enforce it. For the complainants it is answered that the invalidity is not apparent, and can only be shown by extrinsic proof, because the deed given to the purchaser of property sold for delinquent taxes does not recite or set forth the proceedings prior to the sale.

The following is an abstract of the provisions of the city incorporation upon that subject: The corporation has power by ordinance to collect taxes for general municipal purposes, not to exceed one half of one per centum upon all property within its limit subject by law to state and county taxation; and also to collect a special tax of one per centum upon the same property for any specific object within its authority, but the ordinance providing for such special tax must specify the object thereof and the amount necessary therefor; and the aggregate of such general and special taxes levied in any fiscal year, must not exceed one and a half per centum. Section 38, subds. 1, 23, 134.

Property must be assessed annually for taxation and in the manner prescribed by state laws, but the time of making assessments and the returns thereof are to be prescribed by ordinance. Sections 55, 57.

The time for the voluntary payment of taxes to the treasurer is prescribed by ordinance, and within five days thereafter, the treasurer must return the tax roll to the council with the taxes paid to him marked thereon; and all taxes not paid to the treasurer within the time prescribed, are to be deemed and collected as delinquent. Sections 113, 114.

Delinquent taxes must be collected by the marshal, and for this purpose the auditor, by order of the council, must deliver to him the tax roll with a warrant annexed thereto, commanding such marshal to collect the delinquent taxes therein as provided by law; such warrant is to be deemed an execution against property, and must be executed and returned as such; and if sufficient personal property be not found out of which to make the tax, the marshal must levy on any of the real property of the person against whom the tax is charged, but not more than enough to pay all the taxes charged to such person, and the costs of collecting the same, and sell it as upon execution. Sections 115–117.

When real property is sold for delinquent taxes, the person making the sale must make a deed of the same to the purchaser, which

passes all the estate of the owner therein, subject to redemption as provided by law; and the return on the warrant must specify the sum for which each parcel of such property sold, and the name of the purchaser; such deed need not recite the proceedings prior to the sale, but it must appear therefrom that the property was sold by virtue of a warrant from the city of Portland, and the date thereof, together with the date of sale and the bid of the purchaser. Sections 99, 120, 123, 140.

From this abstract of the law governing the levy and collection of taxes by the corporation, I think it clear that if ordinance 468 is void, no extrinsic evidence is necessary to show the invalidity of this special tax. True, the deed to a purchaser at a sale for delinquent taxes does not recite the prior proceedings at length, but they are all a matter of record, and the deed refers to them particularly, by names, dates and amounts. The warrant is identified. Annexed to it is the tax roll, from which it appears what taxes were levied, and what are delinquent. If the complainants' property were sold for this special tax to pay coupons on railway bonds, the facts of the levy and delinquency would appear on the tax roll; and the warrant annexed to it and returned with it into the clerk's office, would show the sale, and to whom and for what amount. These latter facts also appearing in the deed, there can be no difficulty in tracing the matter upon the records of the corporation from the end to the beginning—from the deed back to the ordinance.

But the authorities are not uniform as to what constitutes such a cloud upon title as will justify or authorize a court of equity to remove or prevent it, as the case may be. They all agree in the rule contended for by the defendants, but many of them go further, and decide, that although it may not be necessary to resort to extrinsic evidence to show the invalidity of the instrument or proceeding complained of, yet equity has jurisdiction to prevent, cancel or annul the matter, thing or proceeding, for the purpose of preventing the title to property being affected or encumbered thereby.

In Hamilton v. Cummings, 1 Johns. Ch. 522, Chancellor Kent, after a careful review of the English authorities, says: "I am inclined to think that the weight of authority and the reason of the thing, are equally in favor of the jurisdiction of the court, whether the instrument is, or is not, void at law, and whether it be void from matter appearing on its face, or from proof taken in the cause, and that these assumed distinctions are not well founded."

Mr. Justice Chipman, sitting in the circuit court for the S. D. of N. Y., cites Hamilton v. Cummings, as authority for the expression —"the fact that the deed in question is a void instrument does not take the case out of the jurisdiction in equity." Am. Law Reg.

(Nov., 1867), p. 35. But in this last case, the deed complained of was forged and had been admitted to record in the proper office. It was not only void, but its invalidity did not appear upon its face, and could only be made apparent by extrinsic evidence. Prima facie, the deed was a valid one, and sufficient in law to pass the title to the property described in it.

In Oakley v. Trustees, etc.. 6 Paige, 265, it was held that an assessment upon a town lot for altering the grade of a street, although so far void as not to affect the legal title to the lot, was a cloud upon the title, and an injunction was allowed to prevent the proposed illegal change of grade and consequent assessment.

In this case the court assumed that the assessment was void, and its invalidity must have been apparent on the face of the proceedings. The ruling in this case coincides with that in Hamilton v. Cummings, but appears to be in direct conflict with that made by the same chancellor in Van Doren v. Mayor, etc., 9 Paige, 388.

Yet in Oakley v. Trustees, etc., the complainant was threatened with what appears to have been an irreparable injury to his property, by the illegal digging down of the street in front of it. To prevent this injury the injunction was prayed and might well have been allowed, whether the illegal assessment was void upon its face or not. Notwithstanding, then. the remark of the court that the void assessment would cast a cloud upon the title, I am inclined to think that the injunction was really granted to prevent a material and probably an irreparable injury to the property of the complainant.

In Burnet v. Corporation of Cincinnati, 3 Ham. [Ohio] 73, the sale of town lots for an illegal assessment to improve streets was enjoined. In this case the court says: "In a city the sale of a part of lot for assessments may often be very destructive to the interests of the proprietor, though no title passed by such sale. A cloud would be cast upon the title, which litigation only could remove; and until removed the property might be valueless to the owner; subject, too. during the period of litigation to additional assessments and embarrassments."

But the more modern cases do not appear to go the length of Hamilton v. Cummings or Burnet v. Corporation of Cincinnati. By these, the jurisdiction of equity to remove or perhaps prevent a cloud being cast upon title to real property is confined to the instances where the instrument or proceeding complained of appears to be valid on its face, but is in fact void or invalid for some reason or matter which can only be shown by extrinsic evidence. Van Doren v. Mayor, etc., 9 Paige, 389; Susquehanna Bank v. Supervisors of Broome County, 25 N. Y. 314.

In Ewing v. City of St. Louis. 5 Wall. [72 U. S.] 418, Mr. Justice Field, delivering the opinion of the court, says: "With the pro-

ceedings and determinations of inferior boards or tribunals of special jurisdiction, courts of equity will not interfere, unless it should become necessary to prevent a multiplicity of suits, or irreparable injury, or unless the proceeding sought to be annulled or corrected is valid upon its face, and the alleged invalidity consists in matters to be established by extrinsic evidence. In other cases the review and correction of the proceedings must be obtained by the writ of certiorari. This is the general and well-established doctrine."

This was a proceeding before the mayor to enforce an assessment imposed for benefits to adjoining property by the opening of a street. The object of the suit was to enjoin the enforcement of the order for the collection of the assessment, upon the ground that the proceedings were invalid for want of authority in law. The court said: "If the statutes and ordinance under which the proceedings took place were void, no cloud was thereby cast upon the title of the complainant; nor were the remedies at law for the protection of his property or the redress of trespasses committed upon it in any way impaired."

As to the jurisdiction of a court of equity to remove a cloud already cast upon the title to property, the case of Ewing v. City of St. Louis furnishes an intelligible and authoritative statement of the doctrine of to-day on the subject; but as to when a court of equity may interfere to prevent such a cloud being cast, I apprehend the case does not directly determine. The question did not arise in it, but it is also true that the distinction now suggested is not noticed by it. The case of Burnet v. Corporation of Cincinnati was a case upon which the jurisdiction of the court was invoked to prevent a cloud being cast. The court said that the proceeding complained of (a tax to improve a street) was void and that the invalidity was apparent, yet it enjoined the collection of the tax, and gave reasons as follows:

"When an assessment of a tax is made and its legality disputed, the uncertainty attendant upon the final result puts the estate upon which it operates in imminent jeopardy. If no title pass by the sale, the party has a remedy at law. He can defend his possessions; but if the title do pass, he is remediless altogether. A mode, therefore, of deciding the question before any right is affected, is safest for all parties." 3 Ham. [Ohio] 73.

The feudal reverence for real property of which the common law was redolent, and which the modern mercantile spirit has not yet altogether overcome, doubtless had some influence in the decision of the earlier cases in favor of the interference of equity to prevent a cloud being cast upon title to land. Under the influence of this feeling and the kindred one, that municipal corporations and inferior tribunals were not qualified in power or dignity to take proceedings and make orders affecting the title to or interest in lands, courts have gone great lengths in enjoining the interposition and collection of assessments and taxes upon real property, by municipal corporations for local purposes.

But with the growth of the country and the development of its polity and institutions, so much of the power of the state—both legislative and administrative—has been parcelled out to these local governments and corporations, that it has been found impracticable to subject their proceedings to the risk of being stopped by injunction upon every suggestion or complaint of irregularity or illegality by reluctant or selfish taxpayers and property holders.

Whether, then, a court of equity has jurisdiction to prevent the levy and collection of a tax which is void in law, although such invalidity is apparent, upon the ground that such proceeding, if allowed to be completed, would cast a cloud upon title, is a question that I will not now definitely pass upon. Notwithstanding the generality of the language in Ewing v. City of St. Louis, against the jurisdiction, I am inclined to think that a careful examination of the authorities and the reasons for them, will show that the apparent invalidity of the proceeding or matter complained of, does not necessarily affect the jurisdiction of a court of equity, to prevent by injunction the imposition and collection of an illegal assessment or tax upon real property.

The second ground upon which the equitable jurisdiction of the court is invoked by the complainants, involves the question: Does the issuing of these coupons and the levy and collection of the tax to pay them, amount to a breach of trust by the corporation? In support of the affirmative of the question the complainants cite Davis v. Mayor, etc., 1 Duer, 451, Willard, Eq. 499, 737–739.

These authorities show that a court of equity has jurisdiction over a municipal corporation, in regard to its conduct concerning property and franchises held by it in trust for the inhabitants thereof, the same as in the case of a natural person; and that it will enjoin and prevent such corporation from disposing of its property or franchises fraudulently or for a mere nominal consideration—and this, although the forms of legislation are used to give the transaction the appearance of an exercise of political power for public purposes. The privilege of exemption from judicial interference terminates where legislative action ends. Tried by this standard, it is apparent, that in the passage of this ordinance or the enforcement of it, there is or can be no such breach of trust by the corporation as will justify judicial interference.

The trust, if any, is a political one, for the exercise of which the corporate authorities are only answerable at the polls. The ordi-

nance, if valid, is an exercise of legislative power for public purposes, and not a merely administrative act concerning the management or disposal of property which the corporation, like a private individual, may hold in trust for its constituents. In the passage of such an ordinance, the corporation acts not as a mere trustee of property, but as a local government, exercising for that purpose a part of the supreme power of the state. This rule is affirmed in the clause of the city charter (section 139), which declares that "when any proceeding, matter or thing is by this act committed or left to the discretion or judgment of the council, such discretion or judgment, when exercised or declared, is final, and cannot be reviewed or called in question elsewhere." The injunction cannot be allowed upon this ground.

The prevention of a multiplicity of suits is an acknowledged head of equity jurisdiction, to be exercised by injunction, either against an individual or corporation whether public or private. The case of Ewing v. City of St. Louis, supra, is sufficient on this point. The rule being shown, is this a case for its application? Will a multiplicity of suits arise between these parties, unless equity intervenes to prevent the enforcement of this ordinance? Assuming that the ordinance is void, the complainants may pay the tax under protest and then recover it back by action at law, or may suffer their property to be sold for it and defend the possession at law against the purchaser at the sale for taxes.

If the ordinance only provided that this tax should be levied and collected once, then it might be said that the complainants had a plain, adequate and complete remedy at law, and therefore could not maintain this suit in equity. But the ordinance provides for a levy and collection of taxes to pay these coupons, once a year, for a period of twenty years. To recover them back or defend the possession of the property sold for them, will require a multiplicity of suits, and what is more, arising separately through a long period of time.

In answer to this the defendants argue that the complainants may not own this property for twenty years, and that the corporation may not levy this tax beyond the coming year. I know of no legal presumption that the complainants will part with their property, and if they should, in the meantime they are entitled to protect it, for themselves or the benefit of their successors in interest, as the case may be. They are owners in fee simple and their estate in the premises is without limit as to time.

Nor can the court presume that the corporate authorities will cease to levy this tax after the present year, but the contrary. The complaint states that they will continue to levy it, and as they have commenced to carry out the ordinance, there is no reason to presume that they will cease to do so, unless restrained by external authority.

But this is not all; if these coupons are allowed to issue, they will pass into the hands of third persons. The trustee is directed to sell the bonds for the benefit of the O. C. R. Co. as fast as they are issued to him. The presumption is that they will be negotiable and pass by delivery. White v. Vermont & M. Ry. Co., 21 How. [62 U. S.] 577; Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 95. Whether they will show upon their face the authority under which they are issued does not appear, and for anything I have been able to see in the ordinance, they need not. Innocent holders may and probably will attempt to enforce their payment against the city, and the property of the complainants will be burdened with additional taxation to meet the expense of this litigation. Upon this ground, there can be no doubt but that this court has jurisdiction to grant an injunction to enjoin the levy and collection of this tax, and the issue of these coupons, if the ordinance authorizing the same is illegal and void.

As the validity of ordinance 468 depends upon certain provisions in the state constitution and laws, it is to be regretted that the supreme court of the state has not had occasion to construe these provisions in this respect, so as to furnish this court an authoritative precedent upon the subject.

Complainants cite the following constitutional and legislative provisions as affecting the legality of the ordinance: "Acts of the legislative assembly, incorporating towns and cities, shall restrict their powers of taxation, borrowing money, contracting debts and loaning their credit." Const. Or. art. 11, § 5. "No county, city, town or other municipal corporation, by vote of the citizens, or otherwise, shall become a stockholder in any joint stock company, corporation or association whatever; or raise money for or loan its credit to or in aid of any such company, corporation, or association." Id. § 9.

The act incorporating the defendant—the city of Portland—was approved Oct. 14, 1864. In pursuance of section 5 of the constitution above quoted, it provides: "Sec. 135. The indebtedness of the city of Portland shall never exceed in the aggregate the sum of fifty thousand dollars, and any debt or liability incurred in violation of this section, whether by borrowing money, loaning the credit of the city, or otherwise, is null and void and of no effect." And further, the act of incorporation provides: "Sec. 128. No money shall be drawn from the treasury but in pursuance of an appropriation for that purpose, made by ordinance; and an ordinance making an appropriation of money must not contain a provision upon any other subject, and if it does, such ordinance, as to such provision, shall be void, and not otherwise."

Under these constitutional and legislative

provisions, complainants insist that Ordinance 468 is void for all or either of the following reasons: (1) That, although it pretends in the title thereof, and elsewhere, to be an "ordinance to secure material for public buildings, and the construction and repair of streets adjacent to the public grounds, and to levy a special tax therefor," yet that is in fact intended as a means to raise money for and to loan the credit of the defendant to the O. C. R. Co., contrary to article 11, § 9, of the constitution of the state; (2) that such ordinance creates an indebtedness against the city of Portland exceeding fifty thousand dollars, contrary to section 135 of the act of incorporation; and (3) that, although such ordinance appropriates money, it nevertheless contains provisions on other subjects, contrary to section 128 of the act of incorporation.

The first objection to the validity of the ordinance raises a question of fact, beyond the jurisdiction of this or any other court to inquire of or pass judgment on. True it may be, and true it most probably is, that the real object in passing the ordinance was not to secure material, etc., as stated in the title thereof, but to raise money for and loan the credit of the city to the O. C. R. Co. Yet the city has express authority to construct many kinds of public buildings, including a hospital and water works within or without the city (charter, § 38), and may pass any ordinance not otherwise unlawful, that it may deem necessary or convenient for exercising or carrying out such authority (Id. § 39). It may contract with a railway company as with an individual, unless the primary and express object of that contract be to raise money for or loan credit to such company. The matter of constructing public buildings is committed to the judgment and discretion of the corporation legislature, and whether they act wisely or unwisely, or from good or bad motives, is not the province of a court to inquire. It is a matter between the council and it constituents. Willard, Eq., 739; Charter, § 139.

It may be urged that the constitutional prohibition against raising money for private corporations or associations will be nugatory, if the city is allowed to deal and contract with such a corporation as with a private person; and to some extent this consequence may follow. But I apprehend a court may more safely put some limit upon a prohibition so general as this, than to deny the city the choice of any means not expressly forbidden to it, whereby to exercise its undoubted authority.

The second objection raises the question: Can the city lawfully issue interest coupons to railway bonds, payable half yearly through a period of twenty years, and amounting in the aggregate to over $300,000? The charter (section 135) seems to answer this question in the negative, when it substantially declares in pursuance of section 5 of article 11 of the constitution that the indebtedness or liability of the city must never exceed in the aggregate one sixth of that sum. But the defendants insist, that as the ordinance providing for the issue of these coupons, also provides for raising revenue and appropriates it to the payment of them as they fall due, no indebtedness or liability is thereby created or incurred. In support of this extraordinary proposition they cite the single case of People v. Pacheco, 27 Cal. 175.

This case was decided upon two grounds—the one that a law providing for the issuing of interest coupons on railway bonds did not create a debt, because, at the same time provision was made for levying taxes and appropriating the proceeds thereof to their payment; the other, that the act was passed "in case of war," and therefore the constitutional inhibition against creating a debt did not apply. The act in question was passed during the late Civil War, and the soundness and sufficiency of the latter ground of the decision does not admit of question. The assembly that passed the act put the power upon that ground in the preamble thereof. Mr. Justice Rhodes concurred specially in the decision for the same reason, and as I understand him, expressly dissented from the other.

I have never been able to bring my mind to assent to the reasoning by which the court arrived at the conclusion that the act in question did not create a debt. By means of such artificial reasoning and unlooked for construction of popular and plain terms and phrases, constitutions may be purged of every prohibition upon the legislative power of taxation and creating indebtedness, which the wisdom or fears of the people may place in them.

These constitutional provisions restraining the creation of public debts are the gradual outgrowth of the last twenty or thirty years. They have been erected by the peoples of various states as barriers against the creation of debt by the legislature in a time of popular excitement about internal improvements. In the adoption of these and kindred provisions in the constitution of this state, the people of Oregon supposed that they were thereby putting it out of the power of the assembly and municipal corporations, to pledge the present and future property and labor of the country, for the payment or guarantee of stocks or bonds of private corporations formed for building railways and the like, for the benefit primarily of a few individuals.

To say that a sum of money due or owing from A to B, is not a debt, because A has promised to appropriate, or has appropriated, a portion of his future income to its payment, is a proposition in legal metaphysics that I cannot comprehend. A debt exists against the city whenever the city agrees to pay money in return for services or for money

borrowed. Every one of these interest coupons, when issued by the mayor and auditor as presented in the ordinance, is a promise by it to pay to the holder so much money. If this is not a debt, or evidence of one, then an ordinary promissory note is not. The fact that the ordinance appropriates money to pay these coupons, as they fall due, makes no difference. There is no magic in the legislative formula—"there is hereby appropriated." That does not change the fact that the city owes these coupons, and what it owes to another is a debt due that other. Besides, there is no money in fact set apart by this formula of appropriation, until it is collected.

The ordinance, by providing for the levy and collection of taxes to pay these coupons, recognizes the fact that their issue creates a debt against the city, and thereby undertakes to provide means of payment. But the object of the prohibition in section 135 of the charter is to prevent the council from pledging the future resources of the city beyond the sum of $50,000. The language of the prohibition is explicit and comprehensive. It includes all forms of indebtedness, "whether incurred by borrowing money, loaning the credit of the city or otherwise." If this obligation to pay these coupons is not a debt—is not any form of indebtedness or liability—because the ordinance authorizing their issue promises that the city will pay them when due, then what is there to prevent the council from contracting to pay the O. C. R. Co. for furnishing material to build public buildings, etc. (always including the transportation of all city messengers), the sum of $100,000 per annum for the next one hundred years? If the present limit of annual taxation—one and a half per centum—would raise the sum, and the ordinance so provided, and for its appropriation to that end, such a contract would be every whit as lawful as the one provided for in ordinance 468. Again, every provision of the ordinance, except the part making the appropriation, is void, by reason of section 128, as above cited.

The idea contained in this section was taken from article 8, § 7, of the state constitution. The latter reads as follows: "Laws making appropriations for the salaries of public officers, and other current expenses of the state, shall contain provisions on no other subject."

In the act of October 24, 1864, providing for contracting with certain persons for keeping the insane, a provision was inserted appropriating money to pay the contractors, as per contract. In March, 1864, on a mandamus to the secretary of state, Mr. Justice Boise, of the supreme court, decided that the provision making the appropriation was in conflict with section 7, just cited, and therefore void. The prohibition in the charter against combining appropriations and other matters in the same act, is more comprehensive and explicit than that in the constitution. The former includes all appropriations

and declares the consequence of its violation, namely: that all the provisions of the ordinance, except the appropriation shall be void. Under the ruling of Mr. Justice Boise (and I have no doubt of its correctness), every provision of this ordinance other than the ones making the appropriations are void. All the provisions of the ordinance directing the issue of bonds and coupons, and the levying of taxes and making contracts, were enacted in plain violation of section 128 of the charter, and are therefore invalid and of no force or effect.

This ordinance must be held void upon the double ground that it attempts to create a debt against the city exceeding $50,000, and that it was enacted contrary to the prohibition in section 128 of the charter.

The complainants are thus shown to be entitled to the temporary injunction prayed for. It may therefore issue, restraining the city of Portland and its officers from countersigning, issuing or paying any of said interest coupons, and from levying or collecting any tax mentioned and provided in said ordinance upon or off the property of the complainants, in the complaint mentioned, for the payment of such coupons; but such injunction must not in any manner restrain or direct the defendants in the disposition and management of the tax collected under ordinance 468, in the year 1868. So far as appears, the complainants paid their portion of this levy voluntarily, and they cannot now recover it back. It is no longer their individual money. It has passed into the city treasury, and become municipal property or funds. The complainants, as individuals, cannot maintain any proceeding in court to prevent any appropriation of this money whatever. If any illegal appropriation of it is attempted or threatened, it can only be restrained upon the complaint or information of some one who represents the whole public, to whom it belongs.