# Hagan *v.* Commissioner's Court of Limestone County, *et al.*

*Bill to Enjoin Assessment of Taxes, and Issuance of Warrant.*

(Decided April 6, 1909. Rehearing denied May 11, 1909. 49 South. 417.)

1. *Constitutional Law; Construction.*—The Constitution should be construed according to the plain, common sense meaning of the terms employed, and should not be given a narrow or technical construction.

2. *Interest; Nature.*—Interest is a premium paid for the use of money, usually reckoned as a percentage.

[Hagan v. Commissioner's Court of Limestone County, et al.]

3. *Counties; Taxation; Limitation; Construction of Contract.*—In determining whether a debt created by a contract between a county and a contractor for the erection of a courthouse which provides for the levy of a certain tax, each year for a successive number of years for that purpose, exceeded the limitations fixed by section 224 of the Constitution of 1901, the aggregate amount of the principal sum to be levied for all the years should be considered.

4. *Same; Limitation Upon Indebtedness; Debt.*—Pursuant to the provisions of section 133-139, Code 1907, a county adopted resolutions levying a special courthouse tax of one fourth of one per cent for the year 1909-1817, inclusive, not to exceed a certain aggregate sum with interest thereon as represented by county warrants, provided for in the contract with the contractor, and providing that the resolution should constitute a. continuing contract, and should not be repealed so long as any of the warrants and interest thereon remained unpaid. The principal of the aggregate amount agreed to be levied for all the years added to the existing indebtedness of the county exceeded 3 1-2 per cent of the assessed valuation of the county property. Held, that although by the agreements, it was agreed that no debt should be created thereby, but instead an assignment of the proceeds of the special levy for the years stated was made, yet, section 215, of the Constitution of 1901, could operate only within the limitations fixed by section 224 of such Constitution, and that said later section was to prevent the creation of debts beyond a certain amount, that the contract for the erection of a courthouse created a debt within the meaning of section 224, and hence, was void as exceeding the limitations contained therein.

APPEAL from Limestone Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by W. H. Hagan against the Court of County Commissioners of Limestone County, and others, to enjoin the assessment of a tax, and the issuance of the county warrants based thereon, and for other relief. A temporary injunction was issued, and upon application it was dissolved, from which decree complainant appeals. Reversed and motion to dissolve the injunction denied.

SANDERS & THATCH, and M. K. CLEMENTS, for appellant.—Being a resident property holder complainant can maintain the bill.—*Griffin v. Drennen,* 145 Ala. 128; s. c. 47 South. 785; *Gillespie v. Gibbs,* 41 South. 868. Counties have no inherent powers of taxation, and must have express constitutional authority for the taxes they impose.—*Phoenix Co. v. The State,* 118 Ala. 143; *State*

*v. Street,* 117 Ala. 202. Counsel discuss the sections of the Constitution, bearing upon this question, and conclude that the action of the court created a debt which added to the present indebtedness of the county, rendered the county debt greater than 3 1-2 per cent of the taxable value of the property of the county, and that, therefore, it was in violation of section 224 of the Constitution of 1901.—*Ottumwa v. City Water Sup. Co.,* 59 L. R. A. 604, and note; 23 L. R. A. 402; 66 L. R. A. 96; 32 L. Ed. Sup. Ct. Rep. 1060; 4 S. W. 279; 39 South. 67.

W. R. WALKER, and G. W. L. SMITH, for appellee.— The issuance of interest bearing warrants to pay for the erection of a court house is within the competency of the court of county commissioners.—*Matkin v. Marengo County,* 134 Ala. 155; *Talley v. Commissioners' Court,* 39 So. Rep. 167. The authorization to levy a tax to build a court house includes and confers the authority to provide for suitably furnishing it.—*A. G. S. R. Co. v. Reed,* 124 Ala. 253, 259. A court of county commissioners has sole and exclusive power and authority in the matter of determining the necessity for a new court house * * * and, in the exercise of their discretion in such matters, when free from fraud, corruption or (and) unfair dealing, cannot be questioned or controlled by any judicial tribunal.—*Matkin v. Marengo County,* 137 Ala. 155; *Talley v. Commissioners' Court,* 39 Sou. Rep. 167; Code of 1907, §§ 131-133; *Hays v. Ahlrichs,* 115 Ala. 239, 348. If a levy of special taxes for a series of years is invalid, such is no reason to declare the contract invalid, as it would be the duty of court of county commissioners to make levy annually.—*Talley v. Commissioners' Court,* 39 Sou. Rep. 167. When funds are set apart by statute to pay specific claims against the county, said funds cannot be otherwise used.—*Allen v. Watts,* 88 Ala. 497; 7 Sou. Rep. 190; *State v. Street,* 117

[Hagan v. Commissioner's Court of Limestone County, et al.]

Ala. 207. Where a special tax is levied to pay contract and the proceeds thereof assigned in payment thereof, no debt within the constitutional interdiction is created.— *State v. Helena*, 81 Am. St. Rep. 453; *Prince v. Quincey*, 128 Ill. 443; *Windsor v. Des Moines*, 80 Am. St. Rep. 280, 294; *Swanson v. City of Ottumwa*, 118 Iowa, 161; *Kiehl v. South Bend*, (Ind.) 36 L. R. A. 228; *Saleno v. Neosho*, 127 Mo. 627, 27 L. R. A. 769; *Johnson v. Board of Commissioners*, (Okla.) 56 Pac. Rep. 701; *Shannon v. Huron*, (S. D.) 69 N. W. Rep. 598; *Town-Lot Co. v. Lane*, (S. D.) 62 N. W. Rep. 982; *Laramie v. Meade County*, (S. D.) 72 N. W. Rep. 405; *Darling v. Taylor*, (N. D.) 75 N. W. Rep. 766; *Spillman v. City of Parkersburg*, (W. Va.) 14 S. E. Rep. 279; *Eaton v. Mimnaugh*, (OR.) 73 Pac. Rep. 754; *Law v. People*, 87 Ill. 385.

DENSON, J.—The court of county commissioners of Limestone county, under the power and authority conferred upon them by section 133 of the Code of 1907, having first determined that it was necessary that a new courthouse for that county should be erected, on the 19th day of November, 1908, in the regular way, entered into a contract with the Falls City Construction Company, a corporation, of New Jersey, for the erection of the same. According to the resolution adopted by the court, the contract price agreed upon and fixed was not to exceed the principal sum of $59,000, and the interest thereon at the rate of 6 1-2 per centum per annum, payable semiannually.

The court adopted the following, among other resolutions: "Be it further resolved by the court that there shall be levied, and there is hereby levied a special county court house tax of one-fourth of one per centum on all taxable property of said county, upon the assessment

[Hagan v. Commissioner's Court of Limestone County, et al.]

last made for state taxes, for the years 1909, 1910, 1911, 1912, 1913, 1914, 1915, 1916, and 1917, in payment of the said sum, not to exceed the principal sum of $59,-000.00 and the interest thereon as represented by the county courthouse warrants provided for in the contract made with said company herein set out, for the erection, completion, and furnishing of said building, and which tax levy and this resolution ordering the same shall constitute and is a continuing contract between said county and said company, their successors and assigns, and shall not be in any way limited or repealed so long as any of said county courthouse warrants (which may be agreed upon) and the interest thereupon shall remain outstanding."

The contract with the company is fully set out in the resolutions of the court and adopted by the court. Article 19 of the contract, or so much of it as is necessary for present purposes, is in this language:

"It is further stipulated and agreed that for the consideration herein set forth, to discharge the obligation to the contractor by said county, said court and said county hereby sells, assigns, transfers, sets over and confirms to the said Falls City Construction Company, all of the special county courthouse tax levy and all of the proceeds derived from the levy and collected of the special courthouse tax and levy thereof of one-fourth of one per centum on all the taxable property of said county for and during the years hereinafter mentioned as provided by sections 128 and 145, both inclusive, of the Code of 1907, and out of which tax levy said contractor or its assigns shall be and are entitled to receive the following proceeds with interest from February 1, 1909, at the rate of six and one-half per centum per annum, payable semiannually, that is to say: Said contractor shall receive, to wit:

[Hagan v. Commissioner's Court of Limestone County, et al.]

Out of said tax levy for the year 1908_____$2,000  00
Out of said tax levy for the year 1909_____ 6,500  00
Out of said tax levy for the year 1910_____ 7,000  00
Out of said tax levy for the year 1911_____ 7,500  00
Out of said tax levy for the year 1912_____ 8,000  00
Out of said tax levy for the year 1913_____ 8,500  00
Out of said tax levy for the year 1914_____ 9,000  00
Out of said tax levy for the year 1915_____ 9,500  00
Out of said tax levy for the year 1916_____ 1,000  00

"The foregoing principal installments except the one for $2,000, shall bear interest at the rate of six and one-half per centum per annum from February 1, 1909, payable semiannually, until each of said installments accrue, and provided further that said foregoing described interest added to the foregoing principal installments accrue and make the regular total installments of the amounts the contractor is entitled to receive from said tax fund which are as follows," etc.

The itemized amounts are then set out, making: Total principal, $59,000; interest, $15,989; grand total, $74,989. The contract continues in this language: "And said county and this court agrees to levy said special courthouse building tax of one-fourth of one per centum per annum during the years 1909, 1910, 1911, 1912, 1913, 1914, 1915, 1916, and 1917, for the purpose of creating the proceeds and revenue above set forth and further agrees to evidence said sum and installments above set out by the issuance of valid and lawful warrants drawn on said fund for the principal and interest thereon, and said warrants shall be of the denomination of five hundred dollars each and have coupon warrants annexed to them representing the interest. It is agreed that no debt is hereby created or incurred by said county, but instead thereof a transfer and assignment of the

proceeds of said special tax levy to the amounts herein stated for the foregoing named years are made to said contractor as the consideration and payment for the erection, completion and furnishing of said courthouse building."

A taxpayer filed the present bill, and by it seeks to have the assessment of the tax and the contract declared void, the judge of probate enjoined from issuing the warrants called for in the contract, and the parties restrained from tearing down the old courthouse. A temporary injunction was granted. The defendants attacked the equity of the bill by demurrer, and moved to dissolve the injunction. On the hearing the demurrer was sustained and the injunction dissolved. From the decree the complainant appealed, assigning the same for error.

The theory of the bill is that the contract creates a debt against the county, which, added to the debt of the county in existence at the time the contract was entered into, exceeds the debt limit prescribed by section 224 of the constitution of 1901. That section, so far as the same is applicable here, is in this language: "No county shall become indebted in an amount including present indebtedness, greater than 3 1-2 per centum of the assessed value of the property therein," etc. The averments of the bill show that the assessed value of the property in the county, for the year 1908, was $4,228,-319, and that the indebtedness of the county was $135,-000. Three and one-half per centum on the valuation would give $147,991.16, and the difference between this amount and the indebtedness would be $12,991.16. Thus it is shown, by the averments of the bill, that, if the amount the contractor is to receive for the courthouse should be determined to be a debt, the limit prescribed by the Constitution has been exceeded, and the contract,

[Hagan v. Commissioner's Court of Limestone County, et al.]

together with the levy of taxes to meet its requirement as to consideration, should be held void, unless the effect of section 215 of the Constitution of 1901—on account of the purposes for which the levy and contract were made—is to exempt them from the inhibition contained in section 224.

Section 224 is peculiar to the Constitution of 1901; that is to say, such a provision never existed in the organic law of the state prior to the adoption of that Constitution. Hence there is no decision by our own court for our guidance in the construction of such constitutional provision. Many of the states of the Union, however, have similar provisions in their organic law. Gray, in his work on Limitations of the Taxing Power and Public Indebtedness, writing in respect to such provisions, says: "In the decision of questions arising under these constitutional debt limits, considerations of policy have no place. While it is true that all questions of policy are for the legislature or the people, there are many questions of construction in which the courts allow policy to have some weight, at least when they feel so inclined. But these provisions limiting indebtedness are purely arbitrary, and when the people adopt them all questions of policy are deemed settled. They are to be construed neither liberally nor with excessive strictness, but solely in accordance with their plain meaning. If the people have adopted a mistaken policy in their Constitution, the only remedy is an amendment of that instrument." The intention or purpose in incorporating such a provision in the Constitution is obvious. It was to curb the improvident creation of debts by counties, and thus protect the taxpayers against excessive and unnecessary burdens. It may well be that another reason (one suggested by appellee's counsel) also influenced the framers of the Constitution, namely, that the

credit of the counties might be strengthened, and the counties thereby possibly enabled to secure reduction in the rates of interest to be paid on their obligations; but, however this may have been, it is reasonable and proper, in considering the question in hand, that the first mentioned purpose should be borne in mind.

Upon its face section 224 would seem to afford no room for construction. Its language is clear and explicit and self-construing. But it is thought that the question at issue becomes a complicated one when viewed in the light of section 215 of the Constitution, and it is therefore appropriate at this point to bring that section into view. It provides: "No county in this state shall be authorized to levy a greater rate of taxation in any one year on the value of the taxable property therein than one-half of one per centum: * * * provided, that to pay any debt or liability now existing against any county, incurred for the erection, construction, or maintenance of the necessary public buildings or bridges, or that may hereafter be created for the erection of necessary public buildings, bridges or roads, (a) any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected." It is under this section that the levy of the taxes mentioned in the contract was and is contracted to be made, and the revenues to be derived from such levy are those which the resolution adopted by the court and the contract purport to sell and assign to the construction company, in payment of the courthouse, completed and furnished. Construing the two sections of the Constitution together, it is obvious that section 215 is without any field of operation in a county the indebtedness of

which is up to the limitation fixed by section 224, or whose indebtedness, added to the debt contemplated or about to be constructed, will exceed that limitation; and it is only in those counties not so indebted that section 215 may be brought into play and applied. We think amplification of this point unnecessary, as both parties hereto seem to concede the correctness of the above construction of the two sections in question.

The vital question in the case then is: Would this contract create an indebtedness?

It is frankly admitted in brief of one of appellees' counsel that the contract here involved "is bottomed upon, and patterned after, the holdings of the Supreme Court of Illinois," as set forth in the case of *Springfield v. Edwards*, 84 Ill. 626, and *Law v. People*, 87 Ill. 400. Further, that the endeavor of the respondents has been to meet the phases which might arise should it be held that section 215 is not exempt from the limitation imposed by section 224. This is an important, though perhaps an unnecessary, admission; for few could read the contract without being impressed with the conviction that the parties thereto must have been sensible of the difficulties which the Constitution interposed in their way, and that the phraseology of the contract was ingeniously framed for the purpose of avoiding the restrictions imposed by the organic law; but, in considering the contract, we must not forget that we are dealing with substance, not with form. It is the thing done, or sought to be accomplished, which must determine the question of the power of the country to levy the tax and make the contract. This depends upon the true construction and effect of the whole contract, in connection with the constitutional limitations, and not upon the form or mere phraseology of some of the parts of the contract.

Taking up the question then: Does this contract create a debt within the meaning of the Constitution? It is argued that, under the rulings made in the Illinois Case, no debt was created, "in that, in the moment of its creation, it becomes satisfied by payment; and that therefore, though there may have been in one sense a debt created sufficient to authorize the levy of the special tax, yet that debt was immediately paid by the appropriation, in accordance with the Constitution and statutes of this state, of the proceeds of said tax to the liquidation of said debt." The statutes here referred to are embraced in article 3 of the Code of 1907, sections 133 to 139 inclusive. These sections provide, among other things, in conformity to section 215 of the Constitution, for the levy of a special tax to pay for the erection of county buildings, and further provide that the taxes collected shall not be used for any other purpose. Adverting to the argument of counsel, based on the Illinois cases, in support of the theory that no debt was created in this case, we confess that the reasoning employed seems to us rather too subtle for practical purposes—the construction of a written constitution. As has been stated, the Constitution is not to have a narrow or technical construction, but must be understood and enforced according to the plain, common-sense meaning of its terms. So understood and interpreted, the obvious intent of section 224 is to restrain counties from obtaining money either upon the general credit of the county, or by pledge or transfer of its revenue or assets, thereby creating a debt and imposing additional burdens upon the citizens, which, whether directly or indirectly, involve increased taxation.

In regard to the Illinois cases, the Constitution of that state contained this provision: "No county, city, * * * * * or other municipal corporation, shall be al-

lowed to become indebted, in any manner or for any pur-
pose, to an amount, including existing indebtedness, in
the aggregate exceeding five per centum on the value of
the taxable property therein, to be ascertained by the
last assessment for state and county taxes, previous to
the incurring of such indebtedness. Any county, city,
or other municipal corporation incurring any indebted-
ness aforesaid, shall, before or at the time of doing so,
provide for the collection of a direct annual tax suffi-
cient to pay the interest on said debt as it falls due, and
also to pay and discharge the principal thereof within
twenty years from the time of contracting the same."
There were set out certain sections of the city's charter,
involved in the cases, but these are not necessary to be re-
peated. The city of Springfield, indebted up to the con-
stitutional limitation, borrowed money in large sums,
and for its repayment and payment of the interest there-
on at 10 per centum per annum, which was taken out in
advance, issued warrants on its treasury; it being pro-
vided in the warrants or bonds that, if the same were not
paid when due, they should bear interest until paid.
The warrants were issued presumably when there were
no funds in the treasury for their payment, and no tax
had been levied to raise revenues for that purpose. The
city was enjoined from levying taxes wherewith to pay
the warrants, and' on appeal to the Supreme Court it
there contended that: "When liabilities are created
and appropriations are made, which are within the lim-
its of the revenue accruing, to meet them, they are not
debts within the meaning of the Constitution, and that
temporary loans are not, when within the limits of the
revenue expected to be realized."

Answering the contention, the court said: "The first
branch of this position has support in *Grant v. City,
etc.,* 36 Iowa, 396, *People v. Pacheco,* 27 Cal. 175, *Kop-*

*pikus v. State, etc.,* 16 Cal. 253; *State v. McCauley,* 15 Cal. 455, *State v. Medbery,* 7 Ohio St. 522, and *State v. Mayor,* 23 La. Ann. 358. These cases maintain the doctrine that revenues may be appropriated in anticipation of their receipt, as effectually as when actually in the treasury, and that the appropriation of money which when received meets the services as they are rendered; thus discharging the liabilities as they arise, or rather anticipating and preventing their existence." After referring to the rule for construing the constitutional clause involved, and holding that the borrowed money constituted a debt notwithstanding warrants were issued to cover it, the court said: "If a contract or undertaking contemplates, in any contingency, a liability to pay, when the contingency occurs the liability is absolute—the debt exists—and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred. In this view we are only prepared to yield our assent to the rule recognized by the authorities referred to, with these qualifications: First, the tax appropriated must at the time be actually levied; second, by the legal effect of the contract between the corporation and the individual, made at the time of the appropriation, the appropriation and issuing and accepting of a warrant or order on the treasury for its payment must operate to prevent any liability to accrue on the contract against the corporation. * * * The principle, as we understand, is, there is, in such case, no debt, because one thing is simply given and accepted in exchange for another. When the appropriation is made, and the warrant or order on the treasury for its payment is issued and accepted, the transaction is closed on the part of the corporation, leaving no future obligation, either absolute or contingent, upon it, whereby its debt may be increased." "But," said the

court, "until a tax is levied, there is nothing in existence which can be exchanged, and an obligation to levy a tax in the future, for the benefit of a particular individual, necessarily implies the existence of a present debt in favor of the individual against the corporation, which he is lawfully entitled to have paid by the levy. If the making of the appropriation and issuing and accepting a warrant for its payment does not have the effect of relieving the corporation of all liability, or, in other words, if it incurs any liability thereby, it must manifestly incur, either absolutely or contingently, a debt."

The other case from the Illinois court (*Law v. People,* 87 Ill. 385), cited and relied upon by appellees, merely reiterates and emphasizes the expression contained in the case above quoted from.

Assuming that the expressions or rulings found in those cases are exempt from the principle of obiter dicta, and without for the present turning to other authorities let us for a moment examine by their light the resolutions and contract in judgment. The resolutions purport to levy a tax of one-fourth of 1 per centum, for a series of nine years, to raise the money wherewith to pay the price agreed upon, for the courthouse, not to exceed the principal sum of $59,000, with interest thereon at the rate of 6 1-2 per centum, payable semiannually. The principal sum is divided into nine annual installments. The resolutions also purport to sell, transfer, and assign to the construction company all of the special county courthouse tax levy and all the proceeds derived therefrom, for and during the years mentioned; out of which the contract stipulates the contractor is to receive the annual installments of the principal and interests from February 1, 1909. Warrants were to be issued, for the several installments, in the denomina-

[Hagan v. Commissioner's Court of Limestone County, et al.]

tion of $500, with interest coupons attached. The reso-
lutions then purport to make the tax levy, together with
the action of the court levying the same, a continuing
contract between the county and the company, "their
successors and assigns, and (to provide that same) shall
not be in any way limited or repealed so long as any of
said county warrants and the interest thereupon shall
remain outstanding."

We do not think it can be said with any show of reason
that the resolutions and contract in question square with
the rulings of the Illinois court. In the first place, no
warrants have been issued or accepted, either for prin-
cipal or for interest; but granting, for the sake of the
argument, issuance and acceptance of warrants, how,
may we ask, can there be interest without a debt? "In-
terest" necessarily involves the idea of a debt, a contin-
uing liability, as its foundation. It is defined by Web-
ster to be: "Premium paid for the use of money, usu-
ally reckoned as a percentage; as, interest at five per
cent. per annum on ten thousand dollars."—Internat.
Dict. So this view of the case repels the idea that the
transaction would be a closed one, even if the warrants
had been issued, delivered, and accepted. This position
is reinforced by the stipulations that the resolutions
levying the tax shall not be limited or repealed "so long
as any of said warrants and the interest thereupon shall
remain outstanding." If the warrants were considered
a full discharge of the obligation to the county, why
should interest have been considered at all? Why should
it have been stipulated for? Or if, according to the con-
tention of the appellees, "in the moment the debt was
created it became satisfied by payment, by the appropria-
tion of the taxes," why should there have been a stipu-
lation for interest running through a series of years?
And why should the contract stipulate that the warrants

shall be held in trust for the construction company, to be delivered in the future as the work contracted to be done shall progress?

Furthermore evincing that the contracting parties realized the probable invalidity of the tax levy made for a series of years subsequent to the year 1909, the contract stipulates that the county and court agree to levy "said special courthouse building tax of one-fourth of 1 per centum per annum, during the years 1909, 1910, 1911, 1912, 1913, 1914, 1915, 1916, and 1917, for the purpose of creating the proceeds," etc. Thus it seems clear that the contract creates an obligation on the part of the county to make the levy in the future for the benefit of the company. In this respect it is obvious that, according to the decision in the case of *City of Springfield v. Edwards, supra,* the existence of a present debt is necessarily implied, in favor of the company and against the county.— *State v. City of Helena,* 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 337, 343, 81 Am. St. Rep. 453; *City of Ottumwa v. City, etc.,* 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604; *Coulson v. City of Portland,* 6 Fed. Cas. 629, 636.

But it is urged that no debt is created because the stipulation in the contract is explicit to the effect that "no debt is hereby created or incurred by said county but instead thereof a transfer and assignment of the proceeds of said special tax levy to the amounts herein stated for the foregoing named years are made to said contractor as the consideration and payment for the erection, completion and furnishing of said courthouse building." The case of *Swanson v. Ottumwa,* 118 Iowa, 161, 91 N. W. 1048, 59 L. R. A. 620, is cited and relied upon as supporting this contention; and it must be conceded that it does so. Not only is this true, but it is quite apparent, from a comparison of the resolutions and the contract there involved with those dealt with in this

case, that the scheme here to be passed upon was extracted in toto from the *Swanson Case*. It therefore becomes necessary to consider that case at some length. The case was decided by the Supreme Court of Iowa, and the opinion, by Weaver, J., evinces industrious research; but, as was said by the annotator of the case as reported in 59 L. R. A.: "The case well illustrates the result when the effort on the part of the court to encourage municipal improvement in the face of constitutional restrictions is carried to its logical conclusion. Stripped of subterfuges, that decision permits a municipality, which is already indebted beyond the constitutional limit, to impose an additional indebtedness  *  *  *  upon its taxpayers by making a distinction between the taxpayers in their organized capacity and the same persons as individuals." Furthermore, the same questions involved in the case decided by the Iowa Supreme Court were presented to and decided by the United States Court of Appeals, in Iowa, in the case of *Ottumwa v. City Water Supply Co.,* 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604, and were determined adversely to the rulings made by the state court; while counsel for appellees here insist that it was the duty of the federal court to follow the decision of the state court. The opinion of the Court of Appeals, as we apprehend it, not only accentuates the fact that the court concurred in the state court's interpretation of the Constitution, but makes very clear the point that the difference between the two courts arose, not in the construction of the Constitution, but in the interpretation of the contract or transaction in issue.

But, however this may have been, we are not bound to follow either of these courts, and are at liberty to place upon our own Constitution that construction which to us may seem rational. We do not here recite the facts of those cases; but it will be readily seen, upon

a cursory examination of those cases, that the plan there resorted to, to evade the constitutional limitation, has an exact counterpart in the instant case. The same contention was made in those cases as is here urged, to wit, that the transaction would not create a debt on the part of the city, because the municipality only anticipated for its use specific revenues provided to accrue in the future. It would extend this opinion to too great length to quote all of the opinion of the federal court in criticism of the rulings made by the state court, but we will indulge a limited excerpt: "We have examined carefully the opinion in *Swanson v. Ottumwa,* and cases which are supposed to give support to its conclusions. It will not be profitable to review in detail the reasoning employed to reach the result arrived at. To our minds it is not persuasive and we decline to be guided by it. Its citations exhibit the unceasing attempts in that state (Iowa) and some others to nullify and evade wholesome constitutional limitations upon the power of municipalities to create indebtedness, and thus place intolerable burdens on the taxpayers; and its reasoning but adopts the ingenious, but obviously untenable, arguments by which such attempts have ever been supported." The conclusion reached was that the proposed bonds, if issued, would create an indebtedness against the city, wholly in violation of the Constitution.

"To say that a sum of money due or owing by A. to B. is not a debt, because A. has promised to appropriate or has appropriated, a portion of his future income to its payment, is a proposition in legal metaphysics" that seems incomprehensible. It does seem plain that the fact that the commissioners' court provide for the levy and collection of taxes to pay the warrants and the interest coupons is a recognition of the fact that their issuance will create a debt against the county. It would be a use-

less task to attempt to reconcile the decisions of the different courts of the Union in respect to the question. They are out of harmony. But many of them have been read with care, and, bearing in mind the purpose which inspired the adoption of section 224 (heretofore adverted to), and remembering that "Constitutions are the result of popular will, and their words are to be understood ordinarily as used in the sense that such words convey to the popular mind" (6 Am. & Eng. Ency. Law, 924, 925), we are constrained to hold that there is nothing in either section 224 or section 215 which indicates that the term "debt" was there used otherwise than in its ordinary and popular sense. On the foregoing considerations, it seems to us that the contract would create a debt notwithstanding the ingenious plan adopted to show otherwise.

If this is not a sound conclusion—if the sum contracted to be paid for the courthouse, completed and furnished, is not a debt, because there is a levy of taxes, running through a series of years, to be annually collected from all the taxable property in the county, "till the sum to be paid is paid therefrom," and because the contract provides nonliability, and that the warrants shall be paid only from such taxes so specially levied—then it must be in the power of the court of county commissioners, by mere "jugglery with words," to evade the plain mandate of the Constitution. If that court, by the method adopted, can levy, for a series of nine years, a tax to raise money wherewith to pay for a courthouse why could it not, at the same time and at the same session, similarly levy a tax, to begin at the end of the nine years and to run through a series of years, to raise money wherewith to pay for a poorhouse; and then levy a tax, to begin at the expiration of the poorhouse tax series, and to run through still another series of years,

[Hagan v. Commissioner's Court of Limestone County, et al.]

say 50 years, to raise money for the construction of
public roads? All of these improvements are provided
for in section 215 of the organic law.

We cannot assent to the reasoning by which the con-
clusion is reached that the contract in question does not
create a debt. "By means of such artificial reasoning
and unlooked for construction of popular and plain
terms and phrases, Constitutions might be stripped of
every prohibition upon the legislative power of taxation
and creating indebtedness, which the wisdom or fears.
of the people might place on them." Our conclusion
is that, whatever may be the decisions of the courts of
other jurisdictions, the contract in question creates an
indebtedness.—*Coulson v. Portland,* 6 Fed. Cas. 629,.
636; *Ottumwa v. City, etc.,* 119 Fed. 315, 56 C. C. A. 219,.
59 L. R. A. 604; *Beard v. Hopkinsville,* 95 Ky. 239, 24
S. W. 872, 23 L. R. A. 402, 44 Am. St. Rep. 222; *Prince*
*v. City of Quincy,* 128 Ill. 443, 21 N. E. 768; *State v.*
*Helena,* 24 Mont. 521, 63 Pac. 99, 55 L. R. A. 336, 81
Am. St. Rep. 453; *Ditchfield v. Ballou,* 114 U. S. 190, 5
Sup. Ct. 820, 29 L. Ed. 132; *Windsor v. Des Moines,* 110
Iowa, 175, 81 N. W. 476, 80 Am. St. Rep. 280.

We are also of the opinion, and so hold, that the
amount to be considered, in determining whether the
debt exceeds the limitation, is the aggregate amount of
the contract.—*Culbertson v. City of Fulton,* 127 Ill. 30,
18 N. E. 781; *Beard v. Hopkinsville, supra; Salem Wa-*
*ter Co. v. Salem,* 5 Or. 30; *Prince v. City of Quincy, su-*
*pra; Earles v. Wells,* 94 Wis. 285, 68 N. W. 964, 59 Am.
St. Rep. 886. Adding the $59,000, which the contract
provides shall be paid for the courthouse, to the present
indebtedness carries the total indebtedness of the coun-
ty greatly beyond the constitutional limitation, and,
from the considerations which have been adverted to, it
logically follows that the contract is obnoxious to the.
Constitution, and is void.

We have not overlooked the case of *Tally v. Commissioners' Court of Jackson County*, 39 South. 167; but even a cursory glance at the facts will disclose that that case did not involve the question of debt limitation, and it is therefore not here in point.

It follows that the decree of the chancellor must be reversed, and a decree will be here rendered, overruling the demurrer and the motion to dissolve the injunction.

Reversed and rendered.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.