# Rutledge, *et al. v.* Cramton, *et al.*

## *Partition.*

(Decided June 29, 1911.　56 South. 128.)

1. *Bills and Notes; Interest; Payment.*—Where the payor of the note which was deposited with a stranger as custodian pending litigation, had the right to pay off the note and stop interest at the time he paid it to the custodian, and would have paid it into court had not the custodian accepted payment, by accepting the payment the custodian did not prejudice the rights of the litigant entitled to the proceeds of the note so as to be chargeable with interest beyond the time the note was paid.

2. *Depositary; Duties.*—A custodian of a note pending litigation is not bound to earn profits in the way of interest upon the amount paid him on the note beyond that called for by the note.

3. *Contempt; Depositaries; Acts Constituting.*—The custodian of a note in litigation who received payment thereof according to its tenure before the litigation was finally terminated, was not guilty of a contempt or breach of duty by seeking to review final decree which directed him to turn over the note itself in order to obtain judicial confirmation of his receipt of payment, there having been no final accounting of the money received by him until thereafter.

(Simpson and Mayfield, JJ., dissent.)

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

Bill by T. J. Rutledge and others, against F. J. Cramton and others, for partition. From a decree denying interest on a note deposited with a custodian pending litigation beyond the time of payment, complainants appeal. Affirmed.

W. A. GUNTER, for appellant. The appellants were entitled to interest on the note while in the hands of Ball, or rather the money paid on it from the date it was due until the termination of litigation as it appears that Ball the custodian used it in his own affairs and made profits thereon.—*Phillips v. Toles,* 73 Ala. 406; *Cowan v. Jones,* 20 Ala. 128; *McCalley v. Otey,* 105 Ala.

[Rutledge, et al. v. Cramton, et al.]

472. A wrong doer deals with trust funds at his peril. —*Tharmes v. Herbert,* 61 Ala. 346; *Whaley v. Whaley,* 71 Ala. 159; *Oliver v. Piatt;* 3 How. 333. The proposition that the appeal should be dismissed is fully answered by the case of *Phillips v. Toles, supra.*

BALL & SAMFORD, for appellee. The appeal should be dismissed.—*Phillips v. Toles,* 73 Ala. 411; *Hanson v. Todd,* 95 Ala. 328. Counsel discuss the merits, but without citation of authority.

McCLELLAN, J.—The original proceeding was in equity and sought, among other things, the partition of real property. During the pendency of the cause the parties agreed to and did sell the property, and, by agreement, one-third in value of the purchase-money notes—corresponding to the interest claimed by the Rutledges in the real estate and payable upon the termination of the litigation, and bearing interest at 8 per cent—was turned over to Fred S. Ball to await the event of the litigation. This court, in *Crampton v. Rutledge,* 169 Ala. 486, 53 South. 922, in definition of Ball's relation to the court and to the subject-matter of the controversy said: " * * * He thereby became the custodian of the subject of the litigation. He was, in effect, an officer of the court, and subject to its orders and decrees in dealing with the subject of the suit—just as much so as would be a commissioner who sold the land for division and held the proceeds of the sale, as the purpose and effect of the transaction was to substitute the fund for the land and make Ball a stakeholder. * * *"

Under the circumstances shown by the record, it is entirely safe to say that Ball's act in accepting payment of the Epperson note after the rendition of the final decree of March 4, 1910, and in surrendering it,

wrought no just prejudice to appellants in respect of the interest the obligor had engaged to pay up to the termination of the litigation. Ball accepted payment of the note in question on March 12, 1910. The testimony leaves no room for doubt that the payor of the note had then determined to pay the obligation and to stop the running of interest against him, as was his right to do. Indeed, it was shown that the solicitor for the appellants had suggested to the attorney of the payor of the note that the note be paid. The attorney of the payor almost immediately secured from his client the fund (or check) to pay the note. It may not have been stipulated, or even implied in the suggestion indicated, to whom the payment of the note should be made. However this may be, it was at least reasonable that the offer of payment should have been made to the custodian of the note (Ball) designated by the written agreement of the parties to the cause; and this is especially true, since it was known to the parties that another note, held by Ball under the agreement, had been satisfied by a payment to Ball—a payment that does not appear to have been questioned at any time. Aside from this, it does appear, with reasonable certainty, that had Ball declined to accept the payment of the note, the sum then due upon it would have been paid into the registry of the court; and, hence, the accrual of interest, against the payor, would have then ceased. So, in either event it cannot be ruled, under the evidence before us, that Ball's act in accepting payment of the note, when he did, deprived appellants of any obligation of the payor of the note to longer pay interest. The contingency upon which the note was payable had occurred.

Ball was required, by the court in decree appealed from, to account for, all sums *received by him* in his re-

[Rutledge, et al. v. Cramton, et al.]

lation as custodian—a relation that did not lay upon him any duty to earn profits upon the subject of his custody. He, it affirmatively appears, secured no financial benefit from the possession of the money. The deposit interest, from the bank, was paid in by him.

The decree of March 4, 1910, directed Ball to turn over the *note,* the payment of which he accepted on March 12, 1910. Of this decree he sought revision in this court. It was not until the pronouncement of the decree from which *this* appeal is prosecuted was there any affirmative and final account taken of the *money,* the proceeds of the note so paid to Ball.

Certainly the exercise by Ball and Cramton of the conceived right of revision in this court, of the decree of March 4, 1911, was no contempt of court or breach of duty.—28 Am. & Eng. Encyc. Law, p. 1083. The acceptance by Ball of the payment of the note preserved the principal thereof; and it is only upon the theory that appellants lost interest, as upon the payor's obligation, by Ball's acceptance of payment that a contention could be made to charge Ball therewith. According to the evidence, a refusal by Ball to have accepted the payment as made by the payor's attorney would not have prolonged the period of the payor's obligation to pay interest. Hence, if it was error of judgment, on the part of Ball and of the payor's attorney in effecting the delivery and acceptance of the money to and by Ball, and thereupon the surrender of the *note* to the attorney of the payor, it wrought no prejudice to the appellants.

In consequence, the declination of the court to charge Ball with interest on the proceeds of the Epperson note, additional to that accruing from its deposit in bank, was not error to the prejudice of appellants.

[Rutledge, et al. v. Cramton, et al.]

The decree, in the particular it is assailed on this appeal, is therefore affirmed.

Affirmed.

ANDERSON, SAYRE and SOMERVILLE, JJ., concur.

MAYFIELD, J.—(dissenting).—The questions for decision in this case are: (1) Is a trustee liable for interest upon failure to pay money to beneficiary in accordance with the terms of the trust? (2) Is a trustee liable for interest upon failure and refusal to deliver property to the beneficiary in accordance with the terms of the trust? (3) Is a trustee liable for interest for failure to pay money in accordance with the decree of a court of equity administering the trust? (4) Is a trustee liable to his beneficiary for interest upon failure to pay money, or to deliver a promissory note in accordance with the terms of the trust, and with the decree of a court of equity administering the trust?

Until the decision in this case, I thought the decisions were uniform to the effect that a trustee was liable to his beneficiary for interest, upon and after a failure and refusal to deliver trust property or to pay money in accordance with the terms of the trust, or in accorrdance with the decree of the court of equity administering the trust. The effect of the judgment of this court in this case is to deny the beneficiary interest when both of the above mentioned conditions exist.

The facts are undisputed in this case that Ball received the trust fund, which consisted of notes and money collected thereon, as trustee under an express trust, and that he both failed and refused to pay over the money or to deliver the notes in accordance with the terms of the trust, and with the decree of the court of equity which was administering the trust; and yet

the lower court and this court decline to make him pay interest on the amount due upon the note, or for the money collected thereon, held and retained by him in violation of the express terms of the trust, and in utter disregard of the decree of the lower court and of this court.

The lower court and this court seem to have acted upon the theory that, because there was no mala fides on the part of the trustee in failing and refusing to pay the money or to deliver the note, and because his failure and refusal was in the hope and anticipation of reversing the decree of the lower and of this court as to the distribution he should make of the trust fund, he should not be required to pay interest, either for *failure to deliver the note* as agreed or decreed, or *failure to pay the money* as agreed and decreed.

The error which the lower court and this court have fallen into is in forgetting the principle of law that neither the trial court nor this court has any discretion in the matter as to whether the trustee under the disputed facts in this case, should be required to pay interest. The facts undisputed, the law fixes the liability both in character and extent, and the court has neither the right nor discretion to relieve the trustee from this liability to the beneficiary as to any amount, nor to any extent.

This court said, in the case of *Broughton v. Mitchell*, 64 Ala. 211, that interest attaches as a matter of right to all contracts for the payment of money from the day on which it becomes due, and that no court of law or equity has discretion as to its amounts. Interest is given by statute as a compensation for the detention of the money, and no court has any discretion in its allowance.

Our statute is plain and mandatory, that no court, whether of equity or of law, has the right to avoid the statute nor enforce it. Our statute upon the subject reads as follows: "All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty, bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."—Code 1907, § 4620.

The facts in this case are undisputed that the trustee did make a contract, both for the payment of money and for the performance of acts and duties, and the statute expressly declares that he shall be liable for interest from the day the money should have been paid or the act performed. Why the lower court or this court should decline to follow or to enforce this express statute, I am unable to conceive.

According to the trustee's own answer and evidence, he is clearly liable for interest, both for a failure to pay over the money, and failure to deliver the note. Moreover, it is undoubtedly the law that if the beneficiary had sued the trustee in a court of law, instead of moving for the decree in the chancery court, he would have been liable for interest, both for the amount of money he failed to pay, and for the amount of the notes he failed to deliver, and for the amount of money he collected on the note which he declined to deliver in accordance with his agreement, and with the decree of the court. This being true, he was clearly and certainly liable, and should have been made to pay the same by the chancery court.

That there is no distinction between the right to recover interest in courts of equity and that to recover in courts of law is well established. This court, in the

case of *Crocker v. Clements,* 23 Ala. 296, 312, said: "Courts of chancery upon this, as upon the subject of the application of the statute of limitations, follow the law, and allow interest in all cases where it would have been recoverable had the suit been instituted in the common-law court." It was likewise held in that case that where a sum of money to be refunded was certain, then the law implied a contract and raised a promise to pay it and the interest, and that in such case interest was properly allowed.

Another error which the trial court and this court fell into was in treating the trustee as if he were acting in pursuance of the trust, and not in disregard and violation of it as the undisputed evidence in this record shows he was doing. It is an undoubted principle of law that a trustee who is a bare stakeholder (as was the trustee in this case) is not liable for interest so long as he acts in accordance with the terms of the trust, or unless he uses or realizes profit from the trust fund; and then, if he use it and act in good faith, and without negligence, he is liable only for the profit which he actually realizes; but when he acts in violation and disregard of the express terms of the trust, and in rebellion against the decree of the court which is administering the trust, this rule no longer applies. He is then not only liable for legal interest but may under certain conditions be made liable for compound interest and for other damages in addition thereto. For example: If the trustee in this case had paid over the money to the parties, in accordance with the terms of the trust, and with the decree of the court, or if he had paid it into court on taking the appeal, to await final adjudication, he would not then have been liable for legal interest, but merely for the amount he actually received and was decreed by the lower court to be liable for;

but, having declined to pay in accordance with the agreement, and with the decree of the court, he was no longer protected from liability to interest by such rule, and was at least liable as for the minimum amount of damages, which the law says is legal interest for the time the money and notes of the beneficiary were withheld.

It was well said by this court, in the case of *State v. Lott,* 69 Ala. 154 (speaking of interest), as follows:

"Interest, in this state, has been long regarded not as the mere incident of a debt, attaching only to contracts, express or implied for the payment of money, but as compensation for the use, or for the detention of money. Wherever it is ascertained that at a particular time money ought to have been paid, whether in satisfaction of a debt, or for the failure to keep a contract, interest attaches as an incident.—*Whitworth v. Hart,* 22 Ala. 343; *Boyd v. Gilchrist,* 15 Ala. 849; *James v. Governor,* 1 Ala. 605. The true and just doctrine is expressed in *Dodge v. Perkins,* 9 Pick. (Mass.) 368, approved in *Boyd v. Gilchrist, supra,* that 'the inquiry is, whether the party has done all that the law has required of him in the particular case, whether acting on his own account, or as agent, executor, administrator, or trustee for others. If he has, he is not accountable for interest; if he has not, he is accountable for it, as a compensation for the nonperformance of his contract.' "

In the case of *Godwin v. McGehee,* 19 Ala. 474, a case similar to the one under consideration, the court, in speaking of the liability of a trustee for interest upon failure to pay over the money or funds in accordance with the decree of the court, said: "The fund being called for in the court of chancery, it was the obvious duty of the defendants who desired to rid themselves of the payment of interest upon their unpaid bonds, to

[Rutledge, et al. v. Cramton, et al.] ·

have tendered the money in court, and, if instead of doing so, they engaged in a protracted, expensive, but fruitless litigation concerning it, and hold onto it until obtained at the extremity of the law, it is but equitable and right that they should be required to pay interest."

In the case of *Kirkman v. Vanlier,* 7 Ala. 218, in speaking of the liability of the trustee for interest, the court said:

"Any trustee will be chargeable for interest if he has made interest, used the money, or is guilty of laches or neglect. * * * And * * * if an agent does not in a reasonable time apply money to the purposes for which it was received, he will be liable to pay interest. * * * So if one man retains the money of another, the presumption is that he kept it for the purpose of profit, and that he should therefore pay interest on it." It was further held in that case "that a trustee was liable to pay interest on the trust money in his hands, unless he can show that it was necessarily kept in hand for the purpose of the trust; this he may do upon oath, subject to be controlled by other testimony and the circumstances of the case; and in such case interest is calculated from the time the money was received. But the case more strikingly analogous to the one before us is *Shackelford v. Helm,* 1 Dana (Ky.) 338, in which it was determined that a debtor is not excused from the payment of interest, because the debt is attached in his hands by bill in chancery; unless he bring the money into court, or is enjoined from using it. So it has been decided that an officer of court who has money in his hands, raised by sale of attached effects, which the court forbade him to pay over, shall pay interest, unless it appear that he kept the principal by him."

SIMPSON, J., concurs.