## Gunter, *et al. v. Hackworth, et al.*

*Bill to Enjoin Contract to Build Court House.*

(Decided April 17, 1913.   62 South. 101.)

1. *Counties; Limitations of Amounts of Indebtedness.*—The provisions of sections 1403, 1405, Code 1896, authorizing certain expenditures and the levy of a special tax for that purpose were not existing laws authorizing the creation of an indebtedness within the purview of section 224, Constitution 1901, since the exception in said last named section does not authorize counties to borrow money or contract debts without limit in the execution of those purposes for which they were organized, and to provide for which they had always been empowered to levy taxes, but said constitutional section only applies to cases, where prior to the adoption of the Constitution, the legislature had authorized and empowered the county to issue bonds, and similar cases; this construction is not affected by the omission from section 224 of the provision of section 225, Constitution 1901, that the limitation shall not affect temporary loans to be paid within one year in anticipation of the collection of the taxes.

2. *Same.*—The provisions of section 224, Constitution 1901, applies to all indebtedness in all forms, however incurred or for whatever purpose.

3. *Same.*—Where prior to the adoption of the Constitution the legislature authorized and required a county to issue bonds, part of which were issued before and part after the adoption of the Constitution, under section 224, Constitution 1901, the bonds issued after its adoption, although constituting a debt authorized by existing laws to be created within the first proviso, were not a debt already incurred within the second proviso so as to authorize the additional indebtedness of one, one-half per centum, on the theory that the

county at the time the Constitution was adopted had already contracted an indebtedness exceeding 3½ per centum.

4. *Same.*—The provisions of section 224, Constitution 1901, related to an existing status, and authorized an additional indebtedness of 1½ per centum of the then assessed value of counties already indebted in an amount exceeding 3½ per centum, and was not intended, after assessed values had increased by lapse of time, forever to limit some counties to 3½ per centum, while permitting others to incur an indebtedness to the extent of 5 per centum of future values, dependent on the amount of indebtedness at the time the Constitution was adopted.

5. *Same; Power to Incur Indebtedness.*—Counties have implied power to contract debts, subject to the constitutional limitation as to amounts, though not to borrow money, in the execution of those purposes for which they were organized.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by J. H. Gunter and others, resident citizens and taxpayers of Jackson county, against J. B. Hackworth and others, members of the commissioner's court of Jackson county, and another. Decree for respondents on demurrer, and complainants appeal. Reversed and remanded.

The bill is to enjoin the execution of a contract to build a courthouse, and to declare void interest-bearing warrants issued to pay for the same, and to further enjoin the issuance of such warrant, on the ground that the present indebtedness of the county, independent of the liability sought to be created by this contract, is greater than 3½ per centum of the assessed taxable value of all the property in said county.

COOPER & COOPER, for appellant. No brief reached the Reporter.

VIRGIL BOULDIN, and JOHN B. TALLEY, for appellee. The first proviso in section 224, Constitution 1901, provides that it shall not affect any existing indebtedness which has already been created or authorized by exist-

ing law. Of course, as to debts created the limitation will not apply.—*Sisk v. Carlisle,* 138 Ala. 164; *Moultrie v. Bank,* 82 U. S. 631; 10 Wall. 511; Sec. 10, Constitution of United States; *Adams v. So. Ry. Co.,* 167 Ala. 383. The indebtedness for the erection of a court house is one authorized by existing law to be created.—Sections 1403, 1405, Code 1896; *Talley v. Comm. Ct.,* 39 South. 167; *Matkin v. Marengo County,* 137 Ala. 155; *Weeks v. Bynum,* 158 Ala. 231; *White v. Hewlett,* 143 Ala. 374; *Hayes v. Aldrich,* 115 Ala. 239.

SAYRE, J.—When the constitutional convention of 1901 addressed itself to the purpose of fixing arbitrary limits beyond which the counties of the state should not go in levying taxes and incurring indebtedness, there were presented to it all those possible exigencies of bridges swept away, courthouses, jails, and poorhouses destroyed, in which strict limitations might seriously impair the administration of those functions of government which are committed to county organizations. In the way of limiting indebtedness the result of its deliberation is found in section 224 of the Constitution, which reads as follows:

"No county shall become indebted in an amount, including present indebtedness, greater than three and one-half per centum of the assessed value of the property therein; provided, this limitation shall not affect any existing indebtedness in excess of such three and one-half per centum, which has already been created or authorized by existing law to be created; provided, that any county which has already incurred a debt exceeding three and one-half per centum of the assessed value of the property therein shall be authorized to incur an indebtedness of one and a half per centum of the assessed value of such property in addition to the debt already

existing. Nothing herein contained shall prevent any county from issuing bonds, or other obligations, to fund or refund any indebtedness now existing or authorized by existing laws to be created."

One material point of difference between the parties arises in respect to the proper interpretation of the phrase "authorized by existing law to be created," which occur at the conclusion of the first proviso. The operation of these words in a certain contingency has had consideration in this court. By an act of December 7, 1898, the court of county commissioners of Jackson county had been "authorized, empowered and required" to issue bonds of the county to the amount of $250,000 to provide for the construction of macadamized roads and bridges in said county. On and prior to March, 1902, $187,500 of these bonds had been issued, constituting an indebtedness in excess of 3½ per centum of the assessed value of the property in the county, and the question was whether the constitutional limitations stood in the way of an issue of the remaining $62,500 of the issue authorized by the act. In *Sisk v. Cargile,* 138 Ala. 164, 35 South. 114, the court held that the proposed additional issue of bonds constituted an indebtedness authorized by existing law (at the time of the ratification of the Constitution) to be created, saying, "as to such indebtedness, the provision is as though it were not in the Constitution." Nobody doubts the correctness of that decision; but appellees refer to sections 1403 and 1405 of the Code of 1896, of force at the time the present Constitution went into effect, and reading as follows:

"1403.—The county buildings are to be erected, and kept in order and repair at the expense of the county, under the direction of the court of county commission-

ers, which court is authorized to make all necessary contracts for that purpose."

"1405.—It is the duty of the court of county commissioners of each county to erect a courthouse, jail, and other necessary county buildings; and such court has authority to levy a special tax for that purpose."
--and they say these were existing laws authorizing the creation of an indebtedness. But we cannot accept the suggestion as furnishing a satisfactory explication of the constitutional purpose. To accept it would emasculate the limitation. Prior to the Constitution of 1901 counties had, by necessary implication, the power to contract debts, though not to borrow money, in the execution of those purposes for which they were organized. —*Simpson v. Lauderdale County,* 56 Ala. 64; *Wetumpka v. Wetumpka Wharf Co.,* 63 Ala. 611. This power they still have, but within the limits laid down in the Constitution of 1901. The prohibition against indebtedness is generally construed to apply to indebtedness in all forms, however incurred, or for whatever purpose. Such has been the ruling of this court.—*Hagan v. Commissioners of Limestone Co.,* 160 Ala. 544, 49 South. 417, 37 L. R. A. (N. S.) 1027. The inhibition pronounced by the Constitution at the time of its adoption was against future indebtedness in excess of an arbitrary maximum, except indebtedness authorized by then existing laws, and it is not within the power of the Legislature or the courts to dispense with the limitation or enlarge the exception. In construing the exception, the purpose of the inhibition must be kept in mind. As was said in *Hagan v. Commissioners, supra,* the constitutional purpose "was to curb the improvident creation of debts by counties, and thus protect the taxpayers against excessive and unnecessary burdens." No doubt there was also the other purpose, to which that already named was

complementary, of securing the credit of counties when they had occasion to borrow money or contract indebtedness within the limits prescribed. We cannot conceive that the constitutional convention, in framing a debt limitation, had in view the prohibition of indebtedness incurred, or to be incurred, without relation to the governmental affairs of the counties. The language employed is not apt to the expression of such purpose, nor was its expression necessary in any event. But to construe the exception as authorizing counties to borrow money or contract debts without limit in the execution of those purposes for which they were organized, and to provide for which they had always been empowered to levy taxes, would make the exception coextensive with, and thus destroy, the inhibition. Furthermore, that construction would involve a departure from the evident purpose of the proviso. The general limitation was to operate in the future; but the whole tenor of the proviso shows a purpose to deal with the then existing status, to save debts, already created, though that, in view of the obligation of contracts under the federal Constitution, amounted to nothing more than a dutiful recognition of obligations which in no event could be avoided, and to save debts, not yet created, but which had already been authorized by existing laws. Having regard for the proper use of language, the convention could not have intended to speak of an indebtedness for which there might or might not arise occasion in the then remote future as an indebtedness which had already been authorized by existing law. The proviso or exception must therefore have a more restricted meaning than appellees would assign to it, and we are satisfied that it finds complete expression according to the constitutional purpose in cases of like character with that shown in *Sisk v. Cargile, supra.*

[Gunter, et al. v. Hackworth, et al.]

Our attention has been drawn to the proviso of section 225 of the Constitution. That section limits the indebtedness which municipal corporations may incur with proviso that the limitation shall not affect any temporary loans to be paid within one year, made in anticipation of the collection of taxes, not exceeding one-fourth of the annual revenues of the city or town. It is suggested that a similar provision was omited from section 224 for the reason that the framers of the Constitution thought that in the case of counties no emergencies could arise which would not be covered by then existing laws. But to our mind the fact that it was considered necessary to incorporate this proviso for the benefit of municipal corporations looks just the other way. It leaves unimpaired the consideration that to construe the "existing laws" of the first proviso to section 224 as meaning those previously existing general laws which authorized expenditures for county purposes would make the exception coextensive with the limitation, and so destroy the meaning of the limitation, and seems rather to point to the conclusion that if the convention had thought it well to provide for temporary additional loans for counties as for municipalities, it would have so expressed itself in the first as it did in the last case.

As an alternative proposition appellees say that the proposed indebtedness is, in the present circumstances of Jackson county, authorized by the second proviso of the aforementioned section of the Constitution. By the bill it is made to appear that of the bonded indebtedness of $250,000, authorized by the act of December 7, 1898, $125,000 had been issued prior to the ratification of the Constitution. The remaining bonds authorized by the act have been issued subsequently. Meantime, assessed values in the county have arisen from $4,200,000 to $6,300,000. We need not go further into details. The

facts shown are such that in order to reach a conclusion. in harmony with appellees' last contention, as stated in the brief, it must be held that the bonds to the amount of $125,000, which have been issued since the ratification of the Constitution, constituted a debt then already incurred within the meaning of the Constitution, thus authorizing a resort to the additional 1½ per centum of the second proviso. The argument seems to be that the debts "already incurred" of the second proviso mean the same thing as the debts "authorized by existing laws to be created" of the first proviso. But we think there is a manifest difference between debts already incurred and debts authorized to be created, and the change of phraseology in passing from one proviso to the other is evidence enough that the convention did not consider the two phrases to be equivalent of each other. Here again the convention was dealing with a then present status, and authorized an additional indebtednes of 1½ per centum of the then assessed values of counties which already were indebted in an amount exceeding 3½ per centum of their then values, however much the total indebtedness thus created might exceed 5 per centum of the then assessed value of the county. It cannot be supposed that the intention was that in the long run, after the state and its counties had grown and their wealth accumulated with the lapse of years, and the values of 1901 swallowed up in the vastly greater values of future years, and thus become of no comparative account, as they were justified in assuming would be the case, some counties should be limited to 3½ per centum while others might incur indebtedness to the extent of 5 per centum of future values, depending upon whether their indebtedness at the time of the adoption of the Constitution exceeded or was ·less than, in however small an amount, the limit of 3½ per cen-

[Abney, et al. v. Abney.]

tum of values as assessed for the year 1901. We find no sufficient warrant for such conclusion in the reason of things or in the language of the Constitution. Construing the instrument neither liberally, to advance the purposes of the commissioners' court, nor with unnecessary strictness, to defeat them, but solely in accordance with what appears to be its plain meaning, and without responsibility for the inconveniences of the result, we have reached the conclusion that the demurrer to appellants' bill should have been overruled.

Reversed and remanded. All the Justics concur, except DOWDELL, C. J., not sitting.