(83 South. 170)·

# FIRST NAT. BANK OF ABBEVILLE v. TERRY, BRIGGS & CO. (4 Div. 811.)

(Supreme Court of Alabama. June 19, 1919. On Rehearing, Oct. 23, 1919.)

1. MANDAMUS ⚫1—PERFORMANCE OF MINISTERIAL DUTY; PAYMENT OF COUNTY WARRANTS.

Mandamus to require a county depository to pay out of the road and bridge fund in its hands certain warrants of the county drawn against such fund is not an action on the warrants, but is to require the performance of a ministerial duty on the part of the depository bank.

2. EVIDENCE ⚫83(4)—PRESUMPTION OF PERFORMANCE OF·OFFICIAL DUTY.

Nothing to the contrary being shown, it must be assumed that the record of claims against a county required by Code 1907, § 147, was properly kept.

3. COUNTIES ⚫200—REGISTRATION OF CLAIMS WITHIN TWELVE MONTHS ON DESTRUCTION OF RECORDS.

Code 1907, § 151, providing that claims against a county in which the records have been destroyed by fire are barred if not registered in the proper office of the county within twelve months, has no application to deny relief to claimants whose claims have been recorded and filed for future reference under section 147.

4. COUNTIES ⚫165—IMPAIRMENT OF RIGHTS OF CONTRACTORS BY COUNTY DEPOSITORY ACT.

Gen. Acts 1915, pp. 348, 350, abolishing the office of county treasurer in Henry county, and creating a county depository in partial substitution therefor, did not embarrass or impair rights of road and bridge contractors represented by interest-bearing warrants for the price of road and bridge work validly acquired before the act of 1915 went into effect in January, 1917.

5. STATUTES ⚫263—NO RETROACTIVE EFFECT IN ABSENCE OF CLEAR INTENTION.

A retroactive effect is never attributed to a statute unless the Legislature has expressed a clear intention to that end.

6. DEPOSITARIES ⚫9—COUNTY DEPOSITORY; DUTY TO PAY WARRANTS.

Under Gen. Acts 1915, p. 349, § 5, it was the duty of a county depository to meet the demand for payment of warrants for the price of road and bridge work held by the assignees of the contractors therefor.

7. COUNTIES ⚫192—PLEDGES OF SPECIAL TAX FUNDS TO MEET ANNUAL OBLIGATIONS.

Pledge by a county of funds annually produced by a special tax levied for the particular purpose of affording a fund to meet the annually maturing obligations imposed by certain contracts of the county were valid and binding when made to the extent that the contracts in the order of their making did not exceed the debt limit fixed by Const.·1901, § 224, as interpreted.

8. CONSTITUTIONAL LAW ⚫143—IMPAIRMENT OF VESTED RIGHTS; EXCEEDING CONSTITUTIONAL DEBT LIMIT.

Subsequent to the creation of obligations imposed on a county by certain contracts, and the rights they brought into being, pledging to payment the funds annually raised by a special levy, the county government could not postpone or impair the benefits and security assured by the contracts, in the order of priority, to the contractors, whose rights attached when the contracts were made, and no obligation that the county might incur between the dates of the contract and the audit and allowance of the amounts due thereunder could intervene to become items of indebtedness against the county that might place the amounts due under such contracts, which were within the debt limit of Const. 1901, § 224, in the category of debts incurred beyond such limit.

9. COUNTIES ⚫168(3)—WARRANTS; ORDER OF PAYMENT.

In the order in which a county made road and bridge contracts, it must pay claims thereunder represented by interest-bearing warrants out of an annually collected public fund, the provisions of Code 1907, § 211, directing payment of warrants drawn against general or special funds in the order of their·registration, being inapplicable.

## On Rehearing.

10. MANDAMUS ⚫109—EFFECT OF DEPOSITORY LAW ON RIGHTS OF WARRANT HOLDERS.

The remedy by mandamus by warrant holders against a county to enforce their right to have the warrants appropriately satisfied out of a pledged special fund raised by annual levy was not subjected, by Gen. Acts 1915, pp. 348–350, the county depository law, to any condition not present when such law was enacted.

11. MANDAMUS ⚫65—COUNTY DEPOSITORY A MINISTERIAL CONTRACTEE.

While a county depository is not a "public officer" in the common acceptation of the term, it is a contractee with a positive law-imposed ministerial duty, performance of which may be compelled in proper cases by a writ of mandamus.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Officer.]

12. MANDAMUS ⚫14(2) — DEMAND BEFORE COMPELLING COUNTY DEPOSITORY TO PAY WARRANTS.

The holders of interest-bearing county warrants against a special road and bridge fund to pay the cost of certain road and bridge improvements were not obliged to make any other demand for payment on the county depository than the first demand, which was refused, or to invoke further action by the county body in order to entitle them to mandamus to compel the depository to pay the warrants; their right to the writ being otherwise established.

Appeal from Circuit Court, Henry County; H. A. Pearce, Judge.

Petition for writ of mandamus by Terry, Briggs & Co. against the Bank of Henry;

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the First National Bank of Abbeville being substituted as respondent. From an order awarding the writ, respondent appeals. Reversed and remanded.

R. W. Miller, of Abbeville, and W. W. Sanders, of Elba, for appellant.

Chapman & Lewis, of Dothan, for appellee.

McCLELLAN, J. This proceeding originated in a petition for a writ of mandamus to require the depository of Henry county, the Bank of Henry, to pay out of a special, distinct fund, the road and bridge fund, in its hands, certain warrants of the county of Henry drawn against that particular fund. Subsequently, the appellant, the depository succeeding the Bank of Henry, was substituted as respondent. The agreed statement of facts affords the evidence presented to the trial court for its consideration and upon which its conclusion awarding the writ was rested. The several warrants designated in the petition were warrants contemplated by contracts made by the county of Henry, through its court of county commissioners, with several contractors to repair or construct public roads and bridges in the county.

On February 9, 1915, the county entered into a contract with J. G. Brown to build the Eufaula and Abbeville road; on the same date, with Watley Bros. & Chambliss, to build the Abbeville and Marianna road; on March 25, 1915, with J. G. Brown, to build the Abbeville and Franklin road; on the same date, with J. G. Brown, to build the Abbeville and Clopton road; on April 6, 1915, with C. E. Simmons & Son, to build the Columbia and Newton road, and with the Southern Bridge Company, to build certain steel bridges in Henry county. While these contracts bore an estimate of the probable amount of the obligation they each sought to impose upon the county, yet it appears from them that the actual amount of their obligation was to be dependent upon the work as done and as approved by the engineer, upon which the court of county commissioners should proceed to audit and allow the respective claims for the work done by the several contractors.

[1] It appears from the agreed statement of facts that the services thus contemplated were performed according to the contracts, and that the claims for the respective sums stated in the warrants in question were audited and allowed by the court of county commissioners, thus disclosing conformity to the command of Code, § 146, which requires the audit and allowance of claims of the character here involved. Smith v. McCutchen, 146 Ala. 455, 41 South. 619. It is further recited in the agreed statement of facts that the warrants in question were issued by the judge of probate under the order of the court of county commissioners, necessarily implying, nothing to the contrary appearing, that

they were signed by that official. It is further recited in the agreed statement of facts that at the time this proceeding was instituted the petitioners, appellees, were in possession of and owned the warrants in question, through formal assignment thereof, for value received, by those to whom they were issued; disclosing the right, unless otherwise qualified, in the petitioners to have their warrants satisfied out of the special fund derived from the levy of the special tax for road and bridge purposes and pledged in the contracts to the payment of the obligations thereby assumed on the part of the county. The recital of the agreed statement of facts that the ownership thus admitted was, in effect, subject to the asserted legal condition that the stated assignment of the warrants "passed the legal title out of the parties to whom they were issued," did not, of itself, serve to qualify the right of the petitioners to have the sums called for by the warrants paid to them as the owners of the warrants. This proceeding is not an action on the warrants. See Savage v. Mathews, 98 Ala. 535, 537, 13 South. 328; Littlejohn v. Littlejohn, 195 Ala. 614, 71 South. 448. Its purpose is to require the performance of a ministerial duty on the part of the depository to deliver the special funds, so garnered, in redemption of the pledge so made.

It appears from the agreed statement of facts that these warrants were presented (unnecessarily, we think) to and registered by the county treasurer (Code, § 211), and that the records of that office were destroyed by fire in November, 1916. Code, § 151, provides:

"Claims against a county in which the records have been destroyed by fire are barred if not registered in the proper office of the county within twelve months."

[2, 3] The object of this requirement, and the bar made consequent upon the failure to observe its exaction, was to impose upon those holding allowed claims to register them in the proper office upon the sole condition that the records have been destroyed by fire. It may be quite doubtful whether this requirement had reference to registration with the county treasurer. It is not now necessary to determine that question. Under Code, § 147, the requirement is that—

"All claims passed upon and allowed, according to this section, must be entered in the order in which they were allowed, in a book kept for that purpose, and filed for future reference, within two weeks after the term at which such allowances were made."

Nothing to the contrary being shown, it must be assumed that the record required by section 147 was properly kept. If that record has not been destroyed, which fact is not shown, there remains a record that

precludes the possibility of the existence of the single condition upon which the exaction of Code, § 151, is rested. It results that the bar asserted as upon the failure of the holders of these warrants to register them within twelve months after the fire which destroyed the records of the county cannot avail to deny the petitioners the relief sought.

[4-6] According to the agreed statement of facts, the contracts under which the warrants here involved were issued were entered into at the times respectively stated. In due course, the work thereunder having been done, the claims supporting these warrants were audited and allowed and the warrants issued in accordance with the direction of the court of county commissioners. The act approved September 15, 1915 (General Acts, 1915, pp. 348–350) abolished the office of county treasurer in Henry, among other counties, and created county depositories— contractees (Compton v. Marengo County Bank, 82 South. 159 [1])—in partial substitution therefor. But the act creating depositories did not go into effect until January, 1917, some time after these road and bridge contracts were consummated, and after the court of county commissioners had audited and allowed the claims for which these warrants were issued. There is nothing in the act creating the depositories that indicates a purpose to affect, embarrass, or impair rights that had been validly acquired before the act of 1915 went into effect in January, 1917. To attribute to the act creating depositories an operation that would avoid the theretofore lawfully accomplished audit and allowance of claims, and, in consequence, reflect upon the validity of warrants regularly issued upon such audit and allowance, would require the reading of the act to a retroactive effect—an effect that is never attributed to an act unless the Legislature has expressed a clear intention to that end. Dickens v. Dickens, 174 Ala. 305, 311, 56 South. 806. There is no merit in the contention that the asserted changes in responsibility and duties wrought by the act creating county depositories imposed upon those holding these warrants different obligations, in substance or method, that, if undischarged, would justify the depository in refusing payment of the warrants out of the special fund against which they were drawn, or justify the declination to award the writ prayed to compel the payment of the warrants; provided, of course, the warrant holders were otherwise entitled to their payment or to the relief sought. After the act of 1915 went into effect in January, 1917, and before this proceeding was instituted, demand for payment of these warrants was made upon the preceding depository, the Bank of Henry, and payment was refused, notwithstanding there were special funds, produced by the special levy mentioned, in the hands of the

depository. The following provisions of section 5 of the act of 1915 (General Acts, p. 349) imposed upon the then depository the duty to meet the demand for payment, just as would have been the county treasurer's duty had that office not been abolished and had the demand been made upon the county treasurer (provided, of course, the demandant was otherwise entitled to have payment made from such special, so pledged fund), viz.:

"The bank or banks so designated as depositories for county funds shall be charged with all the duties and subject to the same liabilities in so far as the safe-keeping and paying out of the funds of the several counties are concerned, as are now imposed by law upon county treasurers."

The provisions of section 6 of the act of 1915 emphasizes the effect thus accorded the quoted part of section 5.

[7, 8] As before indicated, the court of county commissioners exercised the authority conferred by section 215 of the Constitution to levy a special tax of one-fourth of one per centum, to raise a special road and bridge fund, which that body undertook to pledge to the payment of such annually maturing legal obligations of the county, assumed under the contracts heretofore mentioned, and issued interest-bearing warrants which were received by the contractors in payment for the work severally done by them under their respective contracts with the county. The pledges of the funds annually produced by the special tax levied for the particular purpose of affording a fund to meet the annually maturing obligations imposed by these contracts of the county were valid and binding when made (Board of Revenue v. Farson, 197 Ala. 375, 379, 72 South. 613, 615, L. R. A. 1918D, 881; Littlejohn v. Littlejohn, supra), to the extent that such contracts, in order of their making, did not exceed the debt limit fixed in section 224 of the Constitution, as that section of the organic law has been interpreted in Hagan v. Com'rs, 160 Ala. 544, 49 South. 417, 37 L. R. A. (N. S.) 1027, and Gunter v. Hackworth, 182 Ala. 205, 62 South. 101, among others. Subsequent to the creation of the obligations those contracts imposed and the rights they brought into being, pledging in the order of their date the funds annually raised by the special levy, the county government was without power to embarrass, postpone, or impair the benefits and security assured by these contracts, in the order of their date, to these contractors. Their rights attached when the contracts were made and as made, and performance of them entitled the contractors to the security and particular source of payment immune from any subsequent act or contract by the county that would impair the availability of the fruits of their several engage-

[1] Ante, p. 129.

404 203 ALABAMA REPORTS

ments. The several indebtednesses these contracts imposed upon the county, not being stipulated in the contracts, depended upon the work done under them, according to the certificate of the engineer and the audit and allowance thereupon given by the court of county commissioners. The contracts themselves fixed the obligation on the county to pay for the work and to make available the security of the fund pledged, and vested in the contractors the right to do the work; and, pending performance, ascertaining the exact value of the work under the contracts, no obligation the county might or did incur, between the respective dates of these road and bridge contracts and the audit and allowance by the county body of the amounts respectively due thereunder, could intervene to become items of indebtedness against the county that might or did place the amounts due, upon audit and allowance, under these road and bridge contracts (within the constitutional debt limit, Const. § 224) in the category of debts incurred beyond such debt limit. Any other conclusion would involve the affirmation of the existence of the prerogative in the county—subsequent to the execution of these contracts in February, March and April, 1915—to impair the vested rights of these contractors even while they were engaged in performing the work contemplated, on a stipulated basis of compensation to secure the annually accruing payment of which the product of a special levy was bindingly pledged.

[9] As between these several contractors, the rule of priority in payment out of the annually collected special fund, pledged to pay the claims as they became fixed in amount by the certificate of the engineer and audit and allowance by the county commissioners, was that established by the order in which these contracts were entered into. The provisions of Code, § 211, directing payment of warrants, drawn against general or special funds, in the order of their registration with the county treasurer, or the county depository at this time, are inapplicable, for that the pledge of special funds in these contracts impressed upon the amounts annually derived from the special levy operated to invest the contractors, or their successors, with an indefeasible right to be paid in the order in which their several pledges of the special fund were respectively given—in the order in which the several contracts were entered into.

Our conclusion accords with that prevailing in the court below, viz., that, under the peculiar circumstances resulting from the special levy stated and the pledge of its product to the satisfaction of the debts contracted by the county with these contractors, the time when or at which the county's indebtedness is to be computed with a view to determining the application of the restrictive provisions of section 224 of the Constitution was the respective dates of the several contracts by which the issuance of the warrants in question were authorized.

As we understand the record before this court, it appears that there are outstanding warrants chargeable against the $9,030.08 that are not owned by the petitioners, appellees. The holders of these warrants are not before the court in this cause, and would not at this stage be bound by any judicial action taken in this proceeding. In such circumstances, it would be improper to compel the depository to pay from the sum of $9,030.08 the full amount of warrants described in the order of the court, when it is possible, if not probable, that the holders of these outstanding and unrepresented warrants would be entitled to share, with all other warrants in that series, under their respective contracts, in the order of their dates, in the proportion they bear to the whole amount of the warrants, maturing in 1917, issued under a contract to which the warrants in question are respectively attributable for their authority.

The order awarding the writ of mandamus is, for this reason only, reversed. The proceeding is remanded that appropriate account may be taken of this factor before the payment of the warrants here involved is ordered to be made by the depository.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

On Rehearing.

McCLELLAN, J. [10-12] The substantive right of the appellee to the fund in question is conceded to be as the foregoing opinion defines it. The two matters now reargued were given due consideration on original review of the appeal. The right of the warrant holders to be paid—in their proper order and according to the preference established by the contracts mentioned—out of the special funds pledged to their orderly satisfaction in the manner prescribed in the contracts (a process that consisted with the law in effect at the time and that was observed in the issuance of the warrants), was not affected in any degree by the subsequent enactment of the law creating depositories; nor was the remedy by mandamus to enforce their right to be appropriately satisfied out of the pledged special fund subjected by the depository law to any condition not present when that law was enacted. It affirmatively appears from the agreed statement of facts that the claims in question were audited and allowed by the commissioners' court; warrants were ordered by the commissioners' court to be issued therefor by the judge of probate; and they were accordingly issued; all as the contracts provided. The warrants so is-

sued were as effectual a direction to the depository to pay as could be desired. Acts 1915, p. 349, first clause in section 5. Certainly, under these circumstances, no other demand upon the county body was required or could be exacted, unless the failure or refusal of the depository to pay gave rise to a further duty on the part of the warrant-holder. The decision in Parker v. Hubbard; 64 Ala. 203, is not an authority for a conclusion that any further duty was imposed upon the warrant holder by the dereliction of the custodian of the fund. In Parker v. Hubbard the effort was to compel the clerk of the county body to issue a warrant, not to pay a warrant already issued, under law that commanded the county body to "draw their warrant" in favor of Parker, and the writ of mandamus was sought, primarily, against the mere clerk of the body, upon whom the law had not imposed the duty to issue the warrant; the court deciding that, before resort to mandamus, recourse should have been had, upon refusal by the mere clerk, to the county body to move that authority to perform the duty the special act had imposed on the body, not the clerk. Here, section 5 of the depository act imposed the duty to pay on the depository by defining that duty in the general terms of the law that governed county treasurers. While a depository is not a public officer, in the common acceptation of that term (Compton v. Marengo Bank, 82 South. 159;[2] Ex parte Underwood Typewriter Co., 82 South. 158[3]), a depository is a contractee with positive law-imposed, ministerial duties, performance of which may be compelled in proper cases by the writ of mandamus. As held on original consideration, there was no obligation on the petitioners to make any other demand or to invoke further action by the county body in order to entitle them to the writ, provided, of course, their right to the writ was established in other respects.

The application is denied.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.